**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Juan Octavio Pena GONZALEZ, Defendant-Appellant.**

**No. 82–2012.**

United States Court of Appeals, Fifth Circuit.

Feb. 28, 1983.

---

L. Aron Pena, Edinburg, Tex., Gerald Goldstein (co-counsel), San Antonio, Tex., for defendant-appellant.

Anna E. Stool, Asst. U.S. Atty., James R. Gough, Chief Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before BROWN, GOLDBERG and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Juan Octavio Pena Gonzalez was charged in a four count indictment with conspiracy to import and importation of heroin in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 952(a) and 963, and with conspiracy to possess and possession of heroin with intent to distribute in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 846. The district court dismissed the importation counts but a jury convicted him of conspiracy to possess with intent to distribute heroin and possession with intent to distribute heroin. Gonzalez now contends: (1) that the district court gave a jury instruction that "constructively amended" the indictment; (2) that the court committed reversible error by excluding testimony of Gonzalez' wife concerning statements he made to her; (3) that the court admitted a co-conspirator's statements against Gonzalez without obtaining independent evidence that he was a member of the conspiracy; (4) that the evidence was insufficient to convict him of conspiracy and possession with intent to distribute; and (5) that the court's questioning of witnesses denied him a fair trial. Finding no merit in these arguments, we affirm.

During July and August of 1981, Antonio Perez, a paid government informant, and Alan Tittle, a Drug Enforcement Administration agent, negotiated with Juan Guerrero for the purchase of large quantities of heroin. After several meetings, Perez and Guerrero met on August 19 in Laredo, Texas with Enrique Claddis, defendant Gonzalez' brother-in-law, and Alfonso Pena, Gonzalez' cousin, to complete the details of the heroin sale. Guerrero, the middleman in the transaction, had known Pena, who in turn introduced him to Claddis, the source of the heroin.[1] Perez agreed to purchase fifteen kilos of heroin and Pena volunteered to bring the heroin from Laredo to McAllen, Texas in his Ford.

Later that evening, Claddis and Pena drove Guerrero to a shopping center in Laredo to show him who would be driving Pena's car to McAllen. They parked next to a pick-up truck occupied by Gonzalez, pointed him out to Guerrero, and told Guerrero that Gonzalez would drive the car containing the heroin. Gonzalez then waved and the trio drove off.

Gonzalez left for McAllen the next morning in Pena's white Ford. Pena followed in a pick-up. Upon reaching Roma, Texas, Gonzalez left the car and entered Pena's truck. Pena drove to a roadside park at which Guerrero soon arrived. Guerrero walked over to Pena's truck and mentioned that he no longer desired to make the "deal." Pena told him not to worry and Guerrero drove to La Feria to pick up Perez.

Meanwhile, Gonzalez returned to the Ford and drove to McAllen. After leaving

---

[1] Pena and Guerrero were indicted with Gonzalez. Guerrero, however, pleaded guilty and Pena became a fugitive.

the car in a parking lot, he drove with Pena around the McAllen area. They then returned to the parking lot and met Perez and Guerrero. Pena handed the Ford's keys to Guerrero and told him to "put the money in the same place the stuff is." Perez also testified that Gonzalez asked him "how long it is going to take" and Perez replied that it would last about one hour. Perez and Guerrero then drove the Ford to La Feria and met two agents posing as purchasers. After finding thirty three pounds of heroin in the car's rear panels, the agents immediately arrested Guerrero and later arrested Pena and Gonzalez in McAllen.

At trial, Gonzalez testified that he did not know why he was asked to drive the Ford to McAllen. He maintained that he drove the car as a favor to Enrique Claddis and that he wanted to see some farm implements in McAllen. Gonzalez also testified that he was parked at the Laredo shopping center because he had promised to meet Claddis at a nearby restaurant for dinner.

### Constructive Amendment of the Indictment

■ Gonzalez first attacks a jury instruction regarding requisite proof of knowledge under 18 U.S.C. § 841(a)(1). The instruction was a reply to the jury's written inquiry whether "it constitute[s] possession under Count 4 if Gonzalez knew there was contraband in the car but did not know it was heroin." After discussing this inquiry with the prosecution and defense, the court instructed the jury that it could convict Gonzalez for possession of heroin if it believed beyond a reasonable doubt that he "knew that there was some controlled substance in the car, whether or not he knew it was actually heroin or some other drug or narcotic. . . ." [2] The court also defined "controlled substance" as "any drug or narcotic that falls within [the Act's] prohibition."

Contrary to Gonzalez' argument, the government is not required to prove that a defendant knew the exact nature of the substance with which he was dealing; it is sufficient that he was aware that he possessed some controlled substance. Thus, we have approved an instruction that "a defendant who has knowledge that he possesses a controlled substance may have the state of mind necessary for conviction even if he does not know what controlled substance he possesses." *United States v.*

**2.** The entire instruction is as follows:

In response to your question, jurors, let me say that actual or positive knowledge that the substance is heroin is not necessary to find that the defendant possessed the heroin if he was aware of a high probability that there was a controlled substance in the car, even though he consciously or deliberately disregarded that probability in an effort to remain ignorant.

Now, he does not have to know it is heroin, but he has to know that it's a controlled substance.

Now, a controlled substance under the Act would be any drug or narcotic that falls within its prohibition. So it gets us back to this willfullness and intentional definition that I told you about, that a person must act with a specific intent to violate or disregard the law, to do something deliberately and on purpose rather than by accident or mistake.

Now, the fact that a person may be dumb or extremely negligent certainly would not make him guilty, because he is not on trial here for not being smart.

But he cannot remain deliberately ignorant, which means simply that the defendant, if he believed he had a controlled substance, be it heroin or some other controlled substance, as I have explained it to you, and deliberately and consciously tried to avoid learning that there was heroin or a controlled substance in the vehicle in order that he would be able to say that he didn't know what there was in the vehicle, then you can treat this deliberate avoidance of positive knowledge as the equivalent of knowledge.

But, of course, it's up to the government— this doesn't shift the burden: The burden of proof is on the government to prove deliberate ignorance, just like it would be on the government to prove knowledge, actual knowledge to start with. It doesn't change that phase of it.

But the long and short of it is, to answer your question, that if Mr. Gonzalez knew that there was some controlled substance in the car, whether or not he knew it was actually heroin or some other drug or narcotic, if he knew that and he believed that beyond a reasonable doubt, then that element of the case would be complied with in order to prove the government's case.

*Rada-Solano,* 625 F.2d 577, 579 (5th Cir.), *cert. denied,* 449 U.S. 1021, 101 S.Ct. 588, 66 L.Ed.2d 482 (1980). *See also United States v. Jewell,* 532 F.2d 697, 698 (9th Cir.) (en banc), *cert. denied,* 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976). Such an instruction does not encourage the jury to convict a defendant for possessing some controlled substance carrying a lesser penalty than heroin when, as here, the substance found in the car concededly was heroin and there was no evidence that Gonzalez believed the car contained any other controlled substance. The court's supplemental instruction thus was an accurate statement of the law.[3]

### Exclusion of Wife's Testimony

Gonzalez contends that excluding his wife's testimony about statements he had made to her the evening before and the morning of his arrest was reversible error. The excluded testimony was that Gonzalez had told his wife that her brother "had asked him to bring that car down [to McAllen] and that he was going to take advantage of the situation and look for the machinery." The trial court found it to be hearsay and inadmissible "for any purpose." Gonzalez now argues that the statement was admissible because: (1) it was not offered "to prove the truth of the matter asserted," *see* Rule 801(c); (2) it showed that he intended to act in accordance with his statement, *see* Rule 803(3); and (3) it was a prior consistent statement offered to support his testimony and to rebut the government's charge of fabrication, *see* Rule 801(d)(1)(B).

We first must determine whether Gonzalez preserved any error for our review un-der Rule 103(a)(2). After the wife's testimony was asserted to be hearsay, Gonzalez' counsel stated that the testimony was being offered "only for what he may have told her." During the later offer of proof, defense counsel asked the wife whether she knew for a fact whether or not the statement was true and she replied "yes." Counsel then engaged in the following colloquy with the judge.

MR. PENA: That's all, your Honor. Your Honor, I offer not so much her testimony as to whether or not this was true, but only the fact that the husband told her he was going to leave for this purpose. Again, my offer is not so much as to the truth of the matter but only that her husband told her this the night before and the day that he left.

THE COURT: How would it be relevant to the case that he told her if it's not for the truth of it? What relevance does that have if he told his wife he was going?

MR. PENA: It supports his testimony, whether believable or not, that he was coming for some other reason but to deliver drugs.

Despite counsel's question to the wife regarding the statement's truth, his subsequent exchange with the court indicated that the statement was not offered for its truth but was offered to support Gonzalez' own testimony and to rebut the government's charge of fabrication. Counsel did not specifically rely on Rule 801(d)(1)(B), but his explanation was sufficient "to assist the trial judge in making a rational determination of its admissibility." *C.B. Wright v. Hartford Accident & Indemnity Co.,* 580 F.2d 809, 810 (5th Cir.1978). As such, coun-

---

**3.** We express no opinion on the correctness of the court's additional comments in the supplemental instruction regarding "deliberate ignorance" beyond noting that any error was not plain. Gonzalez did not timely object under Fed.R.Crim.P. 30. Gonzalez' counsel requested that if the judge intended to instruct that knowledge that the contraband was heroin was not required then the jury should also be instructed on deliberate ignorance. The trial judge did as requested. On appeal for the first time Gonzalez seems to suggest that the trial court's instruction permitted the jury to convict even though they found the substance possessed was not heroin. If this is the contention and we are uncertain, it is equally without merit. Read as a whole the charge does not say that. It was undisputed that the substance possessed was heroin. If the argument is that it would be a material variance to allow the jury to convict for possession of heroin on proof that Gonzalez only knew it to be an unidentified controlled substance, it is without merit as we have explained.

sel preserved this theory of admissibility for our review. Because we agree that the testimony was admissible under this theory, we do not decide whether Gonzalez preserved the other two theories for appellate review.

■ Rule 801(d)(1)(B) provides that a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive." Gonzalez' statement to his wife should have been admitted under this rule. Gonzalez offered his wife's testimony in response to the government's evidence and in anticipation of the government's inevitable attack on his own testimony. Because the implication of the government's evidence necessarily was that Gonzalez had fabricated his defense of lack of criminal intent, Gonzalez should have been permitted to introduce evidence of his prior consistent statement to his wife. *See United States v. Parry,* 649 F.2d 292, 295–96 (5th Cir.1981).

But this was not reversible error whether measured by the "reasonable doubt" or the "substantial influence" standard for harmless error.[4] Gonzalez presented to the jury his reason for driving to McAllen. As Professors Saltzburg and Redden have noted:

> Once a witness testifies and an attack is made on the witness' credibility, if the cross-examiner manages to impeach the witness or to break down the witness' story, it is likely that any prior consistent statement will fall with it. If the trial testimony is rejected as unbelievable by the trier of fact, an identical out-of-court statement also will be rejected.

Federal Rules of Evidence Manual 499 (3d ed.1982).

Gonzalez' reliance upon *United States v. Parry,* 649 F.2d at 296, is misplaced. We reversed Parry's conviction for an error in excluding the testimony of his mother that Parry had earlier told her that he was working with DEA. If that statement were made it perforce showed that Parry had knowledge that he was dealing with the DEA, a fact crucial to his defense. Excluding the mother's testimony thus prevented the jury from learning: (1) that Parry had told his mother the same story he had told them; (2) that he knew he was working with the DEA long before his arrest. In contrast, the excluded testimony here could not demonstrate the timing of Gonzalez' knowledge of a particular fact. The only similarity with *Parry* is that the jury here also was deprived of the fact that Gonzalez had told his wife the same story. Yet, the *Parry* evidence was laid upon a far more closely balanced evidentiary presentation. Gonzalez' story was incredible on its face. He attempted to convince the jury that he thought the purpose of this mini caravan with its furtive stops was to purchase farm implements. Left unexplained was his presence at a restaurant parking lot where after he was pointed out as the driver he gave a wave and departed—all without the dinner he was supposedly there to eat. We also find significant that before Parry's mother's testimony was excluded Parry had told the jury that he had so told his mother. This left the jury to speculate that his mother would not back his story, a prejudicial circumstance specifically noted by the *Parry* panel. Gonzalez never told the jury that he had told his wife the same story. This bite was thus absent here. In sum, the error kept from the jury only that Gonzalez' wife would testify he told her the same story. Because the jury rejected Gonzalez' story, we are firmly convinced that on

---

4. *Compare Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) ("[B]efore a federal constitutional error can be held harmless, the [appellate] court must be able to declare a belief that it was harmless beyond a reasonable doubt.") *with Kotteakos v. United States,* 328 U.S. 750, 764–74, 66 S.Ct. 1239, 1247–52, 90 L.Ed. 1557 (1946) (Inquiry is whether the error had a "substantial influence" on the judgment.). This court has applied both standards in evaluating the impact of erroneous hearsay rulings. *Compare United States v. Martinez,* 588 F.2d 495, 499 (5th Cir.1979) (reasonable doubt standard) *with United States v. Parry,* 649 F.2d at 296 (substantial influence standard).

this record excluding this bit of corroboration was harmless beyond question.

### Co-Conspirator's Statement

 Gonzalez also attacks the district court's admission under Rule 801(d)(2)(E) of Pena's statement to Guerrero that Gonzalez would be driving the car containing the heroin. First, he contends that the district court admitted the co-conspirator's statement without proof "by a preponderance of the evidence independent of the statement itself ... that the co-conspirator and the statement against whom the co-conspirator's statement is offered were members of the conspiracy...." *United States v. James,* 590 F.2d 575, 582 (5th Cir.) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). Second, he insists that the district court was required by *James* to conduct a pre-trial hearing regarding Gonzalez' connection with the conspiracy.

Contrary to Gonzalez' assertion, *James* does not mandate a pretrial evidentiary hearing. *See United States v. Ricks,* 639 F.2d 1305, 1310 (5th Cir.1981). As we recently noted in *United States v. Whitley,* 670 F.2d 617 (5th Cir.1982), "the trial court has discretion to determine the application of the *James* ruling and rationale in the specifics of the trial setting encountered." *Id.* at 620. A separate hearing out of the jury's presence "would be the optimum method for avoiding inadvertant introduction of hearsay and resulting reversible error" *id.,* but we cannot condemn the trial court's admission of Pena's statement subject to a later finding of substantial independent evidence linking Gonzalez to the conspiracy.[5] *See United States v. Nichols,* 695 F.2d 86, 90–91 (5th Cir.1982); *United States v. Leon,* 679 F.2d 534, 540 (5th Cir. 1982).

 We also are convinced that the court did not "clearly err" in ruling that the government proved Gonzalez' involvement in the conspiracy by a preponderance of evidence independent of Pena's statement. *See United States v. Rodriquez,* 689 F.2d 516, 518 (5th Cir.1982). This court has long rejected the proposition that "mere presence" at the scene of a crime is alone sufficient proof of the requisite agreement, *see United States v. Davis,* 666 F.2d 195, 201 (5th Cir.1982); it also has held that participation in a conspiracy may be inferred from a " 'development and a collocation of circumstances.' " *United States v. Nanez,* 694 F.2d 405, 408 (5th Cir.1982) (*quoting Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)). The incident at the Laredo shopping center established the first link between Gonzalez and the conspiracy. Although Gonzalez testified that he parked at the shopping center to meet Enrique Claddis for dinner, he could not adequately explain why he did not go into the restaurant to see if Claddis already was there and why he waved at Claddis then immediately departed without inquiry, including why their dinner plans had changed. This, with circumstances surrounding the trip to McAllen, provides sufficient evidence of Gonzalez' involvement in the conspiracy. The district court's ruling under Rule 801(d)(2)(E) thus was not clearly erroneous.

### Sufficiency of the Evidence

 Gonzalez contends that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he conspired to possess heroin with intent to distribute or that he actually possessed heroin with such an intent. In considering this challenge, we must review the evidence and its inferences in the light most favorable to the government and decide whether "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." [6] *United States v. Bell,* 678

---

**5.** This finding was made at the close of the government's case. Although it ideally should have been made at the close of all the evidence, it had to be triggered by an "appropriate motion at the conclusion of all the evidence."

*United States v. James,* 590 F.2d at 582. Gonzalez did not make this *James* motion.

**6.** The government contends that Gonzalez waived his right to appellate review of the evidence by failing to renew his earlier motion

F.2d 547, 549 (5th Cir.1982) (en banc). We conclude that the evidence was sufficient to allow a reasonable jury to convict Gonzalez on both the substantive and conspiracy counts.

As discussed previously, the government established by a preponderance of evidence that Gonzalez was a member of a heroin conspiracy. This evidence, when coupled with Guerrero's testimony that Pena said Gonzalez would be the driver of the white Ford, suffices to demonstrate beyond a reasonable doubt that Gonzalez knew of, intended to join, and participated in an agreement to violate the narcotics laws. *See United States v. Vergara,* 687 F.2d 57, 60–61 (5th Cir.1982); *United States v. Davis,* 666 F.2d at 201 (5th Cir.1982).

■■■ We also find that the government sustained its burden of proving that Gonzalez possessed heroin with the intent to distribute it. A conviction for possession of heroin with intent to distribute requires proof of three elements: (1) knowing (2) possession of heroin (3) with intent to distribute it. *United States v. Richards,* 638 F.2d 765, 768 (5th Cir.), *cert. denied,* 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 638 (1981). Gonzalez concedes the second element but argues that the government failed to prove the requisite knowledge or intent. We cannot agree that Gonzalez was only an unwitting "mule" who was unaware of the concealed contraband. The government did not prove that Gonzalez could recognize the strong odor in the car as that of heroin, *cf. United States v. Niver,* 689 F.2d 520, 530 (5th Cir.1982) (defendant could recognize sight and smell of marijuana), but it presented other evidence establishing Gonzalez' knowledge. For example, Gonzalez knew the car belonged to Pena but could not explain why Claddis asked him to drive it to McAllen or why Pena followed him in a truck. Moreover, he was unable to explain why he joined Pena for the brief meeting in Roma with Guerrero. Gonzalez

also was present both when Guerrero expressed reservations about the "deal" and when Pena told Guerrero to "put the money in the same place the stuff is." Finally, there was testimony that Gonzalez asked how long "it would take." Under these circumstances, deliberate ignorance suffices for knowledge for purposes of a § 841(a)(1) conviction. *See United States v. Villalon,* 605 F.2d 937, 939 (5th Cir.1979).

■■■ Finally, we find sufficient proof of Gonzalez' intent to distribute the heroin. As we stated in *United States v. Vergara,* 687 F.2d at 62–63, an intent to distribute may be inferred from the possession of a large quantity of drugs with a high price. Gonzalez possessed fifteen kilos of heroin valued at $37,000 per kilo. The jury thus reasonably could have inferred his intent to distribute.

*Court's Questions to Witnesses*

■■■ Gonzalez asserts that the judge's intervention during the trial prejudiced his right to a fair and impartial trial. Citing exchanges between the judge and Perez, Guerrero, and himself, Gonzalez contends that the judge demonstrated a lack of impartiality and became a "surrogate prosecutor." In particular, he identifies over fifty questions from the judge to Perez as inflicting the most damage on his case.

After examining the record, we conclude that Gonzalez received a fair trial. The judge's questioning of Perez was an attempt to clarify Perez' equivocal testimony about the meeting in McAllen with Pena and Gonzalez. His later questions to Guerrero and Gonzalez reflect an effort to illuminate the issue of Gonzalez' knowledge. The judge told the jury that this was his purpose, instructing them that his questions were intended to clarify the facts and should not be regarded "as any indication of how I feel about the case." As we recently stated in *United States v. Bartlett,* 633 F.2d 1184 (5th Cir.1981),

for acquittal at the close of all the evidence. We disagree. At the close of the evidence, the court moved with dispatch and without waiting for the formal motion considered the evidence

and ordered entry of judgment of acquittal on the first two counts. Requiring Gonzalez to move for acquittal on the last two counts would be an empty ritual.

[A] judge is not a mere moderator, and he has an obligation and duty to question witnesses and comment on the evidence when necessary.... In fact a trial judge may elicit facts not yet adduced or clarify those previously presented and he may maintain the pace of the trial by interrupting and curtailing counsel's examinations as a matter of discretion.... Only when the judge's conduct strays from neutrality is a defendant thereby denied a fair trial as required by the Constitution.

*Id.* at 1188 (citations omitted). The judge acted within these limits. We reject Gonzalez' claim of error. AFFIRMED.