**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**No. 99-31097**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**v.**

**FRANCISCO ALEXIS ROMERO, a/k/a**
**FRANCISCO ROMERO-BARAHONA**

**Defendant-Appellant,**

---

**Appeal from the United States District Court for the**
**Eastern District of Louisiana**
**Lower Court No. 99-CR-85-2-L**

---

November 9, 2000

Before GOODWIN,[1] GARWOOD, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:[2]

Francisco Romero appeals his conviction for conspiracy and attempted possession of cocaine with intent to distribute under 21 U.S.C. §§ 841(a)(1), 846. Romero argues that there was insufficient evidence for the jury to convict him of attempting to possess cocaine with intent to distribute. He also argues that the prosecutor prejudiced his trial by misstating the evidence during closing arguments. We affirm.

---

[1] Circuit Judge of the Ninth Circuit, sitting by designation.

[2] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**BACKGROUND**

This case centers on Romero's involvement in a conspiracy to import cocaine from Columbia. A drug trafficker in Colombia hired government informant Fernando Cabrera-Carbajal ("Cabrera") to bring approximately sixteen kilograms of cocaine into New Orleans. The trafficker told Cabrera to use the codename "Pinochet" and to contact a drug dealer named "Mysterio" once Cabrera entered the United States. Cabrera testified that he was supposed to sell the drugs to Mysterio for $ 60,000.

Cabrera arrived in the United States in March 1999 and exchanged the drugs with custom officials for dummy drugs. In a recorded phone conversation, he spoke to Mysterio and arranged to sell the drugs on Canal Street in downtown New Orleans.

Carlos Arturo Rivas, a prosecution witness, testified that the voice of Mysterio belonged to Juan Santos Rodriguez. Rivas met Rodriguez in a pool hall in Houston before the drug sale. Rodriguez invited Rivas to gamble with him in New Orleans. Rivas agreed.

Rodriguez, Rivas, and appellant Romero then drove to New Orleans together in a Ford. Rivas and Romero had not met before. Romero was driving. During the trip, Rodriguez offered Rivas $ 8,000 to pick up "some stuff" from someone named Pinochet in New

Orleans.  Rivas understood "stuff" to mean drugs.  There is no evidence that Romero took part in this conversation.

Once in New Orleans, Romero and Rodriguez dropped Rivas off on Canal Street so Rivas could look over the pick-up location. They agreed to meet again at a certain time.

When they met again, Romero was driving a Jaguar.  Romero and Rodriguez dropped Rivas off, then drove around local streets while Rivas spoke with Cabrera.  Because Rivas had no money, Cabrera refused to give him the dummy drugs or get in the car. Rivas left Cabrera and walked across a parking lot to wait for the Jaguar, which stopped to meet him.  Rivas discussed the situation with Rodriguez, and returned to Cabrera to persuade him to hand over the drugs.  Cabrera again refused.  This sequence of events repeated itself about three times.

Finally, Cabrera told Rivas to park the car.  Rivas returned to the other side of the parking lot, waited for the Jaguar, and spoke to Rodriguez.  Romero drove into the lot and parked. Rodriguez spoke to Rivas outside the vehicle.  Romero paid the parking attendant, and then unsuccessfully attempted to open the trunk of the Jaguar.  Cabrera approached with the dummy drugs and placed them in the back seat of the car.  Cabrera testified that, "I asked them for my money.  They said they didn't bring any money.  Then I turned around; I left, and they stayed in the car. The driver of the car said, 'Quick.  Quick.  This is hot.'"  Rivas,

3

however, testified that "[s]ome money was given to [Cabrera], but I don't know what amount."

Customs Service agents captured the events on the street and in the parking lot on video. The video shows Romero handing something to Cabrera shortly after Cabrera deposited the drugs in the vehicle. The very small item could not be a large sum of money. It is unclear from the videotape whether Rodriguez ever gave anything to Cabrera.

Immediately after Cabrera walked away, Customs Service vehicles pulled into the parking lot. Rodriguez attempted to escape, but agents arrested him. Romero and Rivas jumped into the car and led agents on a high speed chase through downtown New Orleans. Romero was driving. The chase ended when Romero and Rodriguez abandoned the vehicle in a vacant lot. The agents first found Rivas. Approximately forty-five minute later, they found Romero inside a building hiding shirtless under debris. Romero's shirt lay outside the building.

Rivas pled guilty and testified against Romero and Rodriguez at trial. The prosecution tried Rodriguez and Romero together for conspiracy to import cocaine and attempted possession with intent to distribute. Rodriguez pled guilty during trial.

In her closing arguments, the prosecutor played the video of the transaction. She stated, "I'd ask you to look at something that is very significant here. And what I want you to pay

4

attention to and ask yourselves, is [Romero] there by accident;

when on the tape you see that this man is the

one who pays [Cabrera] after [Cabrera] places the drugs in the

car." The defense objected that the prosecutor was misleading the

jury. The district judge immediately instructed the jury:

> Members of the jury, you're to decide what the evidence
> is. And the arguments of counsel does [sic] not give any
> additional evidence to the case. Only you can decide,
> and you must decide from the evidence which the court has
> admitted into the record. If it squares with the
> argument, then you may use it. If not, then disregard
> the argument.

The jury convicted Romero of attempted possession of

cocaine with intent to distribute under 21 U.S.C. §§ 841(a)(1),

846, and aiding and abetting under 18 U.S.C. § 2. Romero appeals.

## DISCUSSION

Romero first contends that the evidence was insufficient

to support his conviction under 21 U.S.C. § 841(a)(1).

We review the evidence and its inferences in a light most

favorable to the government. The conviction must be upheld if a

reasonable trier of fact could find that the evidence establishes

guilt beyond a reasonable doubt. *See United States v. Gonzalez*,

700 F.2d 196, 204 (5th Cir. 1983).

The elements of possession of cocaine with intent to

distribute under § 841(a)(1) are 1) knowledge, 2) possession, and

3) intent to distribute the cocaine. *See United States v.*

5

*Gonzalez*, 700 F.2d 196, 204 (5th Cir. 1983). To prove attempted possession, the Government must show 1) that the defendant acted with the kind of culpability otherwise required for the commission of the crime which he is charged with attempting, and 2) the defendant engaged in conduct which constitutes a substantial step toward commission of the crime. *See United States v. August*, 835 F.2d 76, 77 (5th Cir. 1987).[3] Romero argues only that there was no direct evidence to show that he knew he was attempting to possess cocaine.

This case is very similar to *Gonzalez*. In that case, *Gonzalez* drove a car containing heroin at the request of his cousin. *See Gonzalez*, 700 F.2d at 199. Gonzalez testified that he did not know why his cousin asked him to drive the car, and there was no direct evidence proving that he knew about the cocaine. He was present when parties to the transaction expressed reservations about the "deal" and when they talked about putting money "in the same place the stuff is." Gonzalez asked how long "it would take." This Court ruled that "under these circumstances, deliberate ignorance suffices for knowledge for the purposes of a § 841(a)(1) conviction." *See id.* at 204.

---

[3] The jury also convicted Romero of aiding and abetting under 18 U.S.C. 2. The government had to prove that Romero 1) associated with the criminal enterprise, 2) participated in the venture, and 3) sought by action to make the venture succeed. *See United States v. Casilla*, 20 F.3d 600, 603 (5th Cir. 1994). Because we conclude that there was sufficient evidence that Romero knowingly participated in the venture, there is sufficient evidence to convict him of aiding and abetting.

6

The circumstances of this case also demonstrate that Romero was at least deliberately ignorant. Romero was in the car when Rodriguez offered Rivas $ 8,000 to pick up "stuff" that Rivas understood to be drugs. Rivas recognized this even though he was a stranger to both Romero and Rodriguez. Romero dropped Rivas off to scout out the pick-up site. Romero and Rodriguez exchanged vehicles. Romero drove around each time Rivas went to speak with Cabrera, and parked only when Cabrera demanded that he do so. Romero paid the parking attendant and unsuccessfully attempted to open the trunk for the dummy drugs. When Cabrera dropped off the dummy drugs, Cabrera testified that Romero said, "[q]uick, quick, this is hot." Rivas testified that "some money was given" to Cabrera, and the videotape shows Romero giving something to him. When Customs Service agents pulled into the parking lot, Romero and Rivas drove away so quickly that the agents were unable to stop them. Romero hid under debris and disrobed to evade the agents. There is sufficient evidence here for a reasonable jury to conclude that Romero knew he was attempting to possess cocaine.

II.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN REFUSING TO GRANT A MISTRIAL.

Romero also argues that the district court should have granted a mistrial because the prosecutor misstated the evidence in her closing argument. We review orders denying a mistrial for abuse of discretion. *See United States v. Mitchell*, 166 F.3d 748, 751 (5th Cir. 1999).

This Court analyzes allegations of prosecutorial misconduct to determine 1) whether the prosecutor's comments were improper; and 2) whether the comments prejudiced the defendant's substantial rights. *See United States v. Lankford*, 196 F.3d 563, 574 (5th Cir. 1999).

The prosecutor's statement was not improper because she was urging the jury to draw a conclusion based on the evidence. "[A]n attorney is entitled to urge the conclusions which the attorney thinks the jury should draw from the evidence." *United States v. Allen*, 588 F.2d 1100, 1108 (5th Cir. 1979) (finding no misconduct in a summation because evidence supported the prosecutor's conclusion). Rivas testified that either Romero or Rodriguez paid Cabrera, and the videotape showed Romero giving Cabrera something. Although Cabrera said he received no money, sufficient evidence supports the prosecutor's summation.

Even if the summation was improper, it was not prejudicial enough to require a mistrial. "Error must be regarded as harmless if, upon an examination of the entire record, substantial prejudice to the defendant does not appear." *United States v. Morris*, 568 F.2d 396, 402 (5th Cir. 1978). Here there was at least some basis for the prosecutor's statement, and the district judge immediately clarified the jury's duty to draw conclusions. Any error was harmless, and the district court did not abuse its discretion. *See Allen*, 588 F.2d at 1108 ("Because

8

there was some basis in the record for the [prosecutor's conclusion] and there was substantial other evidence . . . the district court's instruction to the jury to disregard the offending language was adequate to cure any prejudice."); *Morris*, 568 F.2d at 402 (finding no substantial prejudice where the prosecutor asserted that government agents were unbiased and the trial judge immediately told the jury that the summation was not evidence).

For the reasons stated above, the judgment is **AFFIRMED**.