**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert COE, Jr., Dennis M. Korenak, Michael Joseph, Defendants-Appellants.**

**Nos. 82–2415 to 82–2417.**

United States Court of Appeals,
Seventh Circuit.

Argued April 6, 1983.

Decided Sept. 23, 1983.

Rehearing and Rehearing En Banc
Denied Jan. 4, 1984.

A. Michael Kopec, Springfield, Ill., Robert A. Simons, Kansas City, Mo., Michael J. Costello, Costello, Young & Metnick, Springfield, Ill., for defendants-appellants.

Patrick J. Chesley, Springfield, Ill., for plaintiff-appellee.

Before PELL and ESCHBACH, Circuit Judges, and JAMESON, Senior District Judge.*

ESCHBACH, Circuit Judge.

Robert Coe, Jr., Dennis Korenak and Michael Joseph appeal their criminal convictions of violating various federal drug and firearm provisions. For the reasons below, we affirm.

## I

The evidence, taken in the light most favorable to the government, indicates that Robert Coe, Dennis Korenak and Michael Joseph traveled together from Kansas City, Missouri to Springfield, Illinois for the purpose of purchasing marijuana, each in actual or constructive possession of a firearm.

As part of a plea arrangement, an admitted drug dealer named James Lee Klinefelter agreed to cooperate with law enforcement officials in their marijuana and narcotics investigations. To this end, Klinefelter contacted Robert Coe in late March of 1982, and in a series of nineteen phone calls, arranged to meet Coe in Springfield for the purported purpose of selling him marijuana. Klinefelter had known Coe for a number of years and had sold Coe 350 pounds of marijuana in July of 1981. Tapes of these phone conversations disclose that Coe was attempting, with little success, to bring in other persons with the necessary cash to make a large purchase. Coe mentioned at various times that he had individuals lined up with varying amounts of cash, later explaining that these people could or would not be able to finance the buy. Finally, on April 15, 1982, Coe said that he had someone with $12,000 ready to make the buy. Klinefelter directed Coe to meet him in the parking lot of a Denny's restaurant in Springfield, Illinois at 5:00 p.m. that evening. Coe indicated that they would arrive in a white Chevelle. When a white Chevelle carrying Coe, Korenak and Joseph arrived at the parking lot at approximately 4:30 p.m., police arrested the occupants. Joseph was driving the car, which was registered to him. Under the driver's seat was a bank bag containing $12,000 in cash and a loaded Ruger .41 magnum revolver. Korenak was seated in the back seat. Officers discovered a loaded .22 caliber Titan automatic pistol in his rear pants pocket. Coe was seated on the passenger side of the front seat and, according to one officer, reached for the glove compartment at the time of his arrest. The officer found a loaded .45 caliber Browning automatic pistol in the glove compartment.

After being informed of his rights, Joseph made a statement to the police. According to his statement, he accompanied the other two occupants of the car, whom he knew only as "Dennis" and "Bob," to Springfield to buy used cars. He said that he had worked for Dennis at one time, and that he had just met Bob that day. He said that Dennis and Bob were going to show him some vehicles that were for sale, and that he, as an auto mechanic, might want to buy some, fix them, and sell them for a profit. He had brought a large amount of cash for this purpose, and had brought the loaded firearm for security. If he had found any vehicles he wanted to buy, he would return to Kansas City, obtain a trailer, come back to Springfield to load the vehicles, then bring them back to Kansas City. He said he did not know the person from whom he was to purchase the cars.

Coe and Korenak testified at trial, corroborating Joseph's statement. Korenak testified that at one time he operated a service station, at which Joseph worked part time. Coe called him up to tell him about some cars that were for sale in Springfield, and Korenak in turn called Joseph and relayed the information. Joseph was interested and had $12,000 to invest, so the three men drove together to Springfield

---

* The Honorable William J. Jameson, Senior District Judge for the District of Montana, sitting by designation.

for the purpose, as Korenak understood it, of buying used cars.

Coe testified that the whole used car story was a fabrication of his, which he had told Korenak and Joseph to convince them to come to Springfield with a large amount of cash. Coe's purpose in arranging this was so that he could meet Klinefelter face to face, show him the cash, then go with him alone to a place where he kept his "stash" of drugs, other valuables and money. At that time, Coe intended to try to collect on a debt owed him by Klinefelter's brother-in-law, and for which Coe felt that Klinefelter should be held partly responsible. When he had collected the debt, or obtained information on where to find the brother-in-law, he intended to go back to the motel where Joseph and Korenak were waiting with the cash, tell them that there were no cars to buy after all, and return to Kansas City. Coe denied having bought marijuana from Klinefelter on any prior occasion and claimed that the drug lingo he used in his conversations with Klinefelter had been picked up from acquaintances who were involved with drugs. He denied knowing that there was a gun in the glove compartment of the Chevelle at the time of his arrest, and denied having made any movement toward the glove compartment.

On April 21, 1982, a grand jury returned a nine count indictment against the appellants. Count I charged Coe, Korenak and Joseph with conspiring to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846. Counts II through IV charged Joseph, Korenak and Coe, respectively, with transporting a firearm in interstate commerce with the intent to commit an offense punishable by a term of imprisonment exceeding one year in violation of 18 U.S.C. § 924(b). Counts V through VII charged Coe, Korenak and Joseph, respectively, with knowingly carrying a firearm during the commission of a felony in violation of 18 U.S.C. § 924(c)(2). Count VIII charged Korenak, as a convicted felon, of possessing a firearm in violation of 18

U.S.C. Appendix § 1202(a).[1] Count IX charged Korenak, as a convicted felon, of transporting a firearm in interstate commerce in violation of 18 U.S.C. § 922(g)(1).

On July 1, 1982, a jury found all appellants guilty of all counts with which they were charged. Coe was sentenced to consecutive five and three year terms in prison on counts I and V, respectively. He received a five year term of probation on count IV, consecutive to any parole term resulting from the terms of imprisonment. Joseph was sentenced to concurrent three year terms of imprisonment on counts I and II and to a five year term of probation on count VII, consecutive to any parole term resulting from the terms of imprisonment. Korenak was sentenced to concurrent five year terms of imprisonment on counts I, III and VI and to concurrent five year terms of probation on counts VIII and IX, the terms of probation to be consecutive to any parole term resulting from the terms of imprisonment. Coe, Korenak and Joseph appeal.

II

Each of the appellants raises several issues on appeal. Joseph and Korenak contend that the district court erred in allowing the taped telephone conversations between Coe and Klinefelter to be considered against them. They further contend that in the absence of this evidence, there is insufficient evidence to support their convictions of conspiracy, transporting a firearm in interstate commerce with intent to commit a felony and carrying a firearm during the commission of a felony.[2] Coe contends that the trial court erred in denying his motion for a mistrial on the firearm counts because the government had deprived Coe of potentially exculpatory evidence by failing to preserve fingerprint evidence on the firearm found in the glove compartment at the time of his arrest. Coe makes an additional claim of error stemming from the lack of fingerprint evidence—that the district court erred in re-

1. Korenak had a prior conviction of possession with intent to distribute marijuana.

2. Korenak does not appeal his conviction on Counts VIII and IX.

fusing to give a "missing witness" jury instruction directed at the government's failure to produce fingerprint evidence connecting the firearm with Coe. The appellants make several additional claims of error, which are insubstantial and will be addressed summarily.

### III

#### A. The Taped Telephone Conversations

The statements Coe made to Klinefelter during the taped phone conversations were out-of-court statements offered into evidence to prove the truth of the matters asserted, and thus present potential hearsay problems. Fed.R.Evid. 801(c). The government contends that Coe's statements were not hearsay but rather admissions by a party-opponent and thus were admissible against Korenak and Joseph. "A statement by a coconspirator of a party during the course and in furtherance of the conspiracy," is classified as an admission by a party-opponent and is admissible under Fed.R.Evid. 801(d)(2)(E).

The parties agree, however, that before the coconspirator hearsay exception is applied, the government must prove by a preponderance of independent evidence that a conspiracy existed, that both the declarant and the defendant were members of the conspiracy, and that the statement was made during the course and in furtherance of the conspiracy. *United States v. Santiago,* 582 F.2d 1128, 1134 (7th Cir.1978). The parties differ, however, on whether the burden of proof was met here.

■■■ Statements of a coconspirator are classified as nonhearsay party admissions on the theory that members of a conspiracy are partners in crime and thus are agents of one another. *See Anderson v. United States,* 417 U.S. 211, 218 n. 6, 94 S.Ct. 2253, 2259 n. 6, 41 L.Ed.2d 21 (1974); *Hitchman Coal & Coke Co. v. Mitchell,* 245 U.S. 229, 249, 38 S.Ct. 65, 71–72, 62 L.Ed. 260 (1917). Conspiracy as an evidentiary rule differs from conspiracy as a crime. The crime of conspiracy comprehends much more than just a joint venture or concerted action, whereas the evidentiary rule of conspiracy is founded on concepts of agency law. *United States v. Gil,* 604 F.2d 546, 549 (7th Cir.1979); *United States v. Trowery,* 542 F.2d 623, 626 (3d Cir.1976), *cert. denied,* 429 U.S. 1104, 97 S.Ct. 1132, 51 L.Ed.2d 555 (1977). Recognizing this, some courts refer to the coconspirator exception as the "joint venture" or "concert of action" exception. *See United States v. Gil, supra,* 604 F.2d at 549. A charge of criminal conspiracy is not a prerequisite for the invocation of this evidentiary rule. *Id.* at 549. Indeed, it may be invoked in civil as well as criminal cases. *Id.* For the purpose of evaluating the admissibility of Coe's taped phone conversations against Korenak and Joseph under the coconspirator hearsay exception, it is irrelevant that the appellants were charged with the *crime* of conspiracy. The government did not have to prove by a preponderance of the evidence all the elements of the criminal conspiracy before Coe's statement could be admitted against Korenak and Joseph.

The proposition that the government did have to establish by a preponderance of independent evidence was that Coe, Korenak and Joseph were engaged in a joint venture—that there was a "combination between them . . . ." *Hitchman Coal & Coke Co. v. Mitchell, supra,* 245 U.S. at 249, 38 S.Ct. at 72. However, "it is not necessary to show by independent evidence that the combination was criminal or otherwise unlawful. The element of illegality may be shown by the declarations themselves." *Id.; see United States v. Jackson,* 627 F.2d 1198, 1216 (D.C.Cir.1980); *Fuentes v. United States,* 283 F.2d 537, 539–40 (9th Cir. 1960). Of course, the government must establish that the statements it seeks to admit were in the course and in furtherance of the particular joint venture it has established. It would not suffice in the instant case for the government simply to show that the appellants were all on a joint venture when they were arrested in Springfield. Even if Korenak and Joseph were indeed on a joint venture with Coe, statements Coe made regarding a *different* joint venture with *other* parties for *another* purpose would still be

inadmissible. The government must prove by a preponderance of independent evidence that the appellants were on a joint venture and that the statements sought to be admitted were in the course and in furtherance of *that* joint venture.[3]

 The district court found sufficient evidence to establish the existence of a joint venture and to connect Coe's statements to Klinefelter with that joint venture. Korenak and Joseph contend, however, that the district court improperly used Coe's statements themselves to establish the connection. The district court rested his decision to admit the statements in large part on the fact that a white Chevelle carrying the appellants and $12,000 in cash arrived at the Denny's parking lot exactly as predicted. This evidence was not independent of the statements sought to be introduced, because Coe's statements were the source of this prediction. If the hearsay statement itself could be considered in determining its admissibility, "hearsay would lift itself by its own bootstraps to the level of competent evidence." *Glasser v. United States,* 315 U.S. 60, 74–75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942); *see also United States v. Jackson,* 627 F.2d 1198, 1214–15 (D.C.Cir.1980); *United States v. James,* 590 F.2d 575, 581 (5th Cir.) (*en banc*), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979); *United States v. Bell,* 573 F.2d 1040, 1044 (8th Cir.1978); *United States v. Trowery,* 542 F.2d 623, 627 (3d Cir.1976), *cert. denied,* 429 U.S. 1104, 97 S.Ct. 1132, 51 L.Ed.2d 555 (1977).[4] While the district court did err in considering the contents of Coe's state-

ments in determining that the government had met its burden of proving the existence of a conspiracy and the membership of Korenak and Joseph, we would find this error harmless if the record discloses that the government did indeed produce the requisite independent evidence to discharge its burden of proof.

Before we consider whether this error was harmless, however, we must address a related claim of error. Korenak and Joseph contend that the court should have made its determination at the close of all the evidence rather than at the close of the government's case-in-chief. They posit that the government's burden of proof by a preponderance of the evidence requires the court to consider *all* the evidence adduced at trial, not just that produced during the government's case-in-chief. Indeed, all of the cases that we have encountered addressing this issue agree. *See, e.g., United States v. Patterson,* 644 F.2d 890, 896 (1st Cir.1981); *United States v. Jackson, supra,* 627 F.2d at 1219; *United States v. James, supra,* 590 F.2d at 582–83; *United States v. Bell, supra,* 573 F.2d at 1044; *United States v. Stanchich,* 550 F.2d 1294, 1297–98 (2d Cir.1977).

 We have stated that the normal practice of determining admissibility would be for a defendant to object to the challenged statement when the government seeks its admission, whereupon the judge would determine whether there is sufficient independent evidence to support admission.[5]

---

**3.** There is language in some cases to the effect that the government must establish that the conspiracy or joint venture was illegal before the coconspirator hearsay exception may be invoked. *See, e.g., United States v. Gil,* 604 F.2d 546, 549–50 (7th Cir.1979). We read this, however, as simply requiring that the statements relate to the crime charged in a criminal case. *Gil* itself stated that the coconspirator exception is applicable in civil as well as criminal cases. *Id.* at 549. In a civil case, there may be no criminal conspiracy or unlawful actions involved, yet the coconspirator or "joint venture" hearsay exception could be invoked.

**4.** The Sixth Circuit has taken the position that Rule 104(a) of the Federal Rules of Evidence,

under which a court determines admissibility of evidence, has modified prior law and allows the court to consider the hearsay statements themselves in determining their admissibility. *See United States v. Vinson,* 606 F.2d 149, 153 (6th Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). Most circuits, including our own, continue to endorse the requirement that admissibility be established by evidence independent of the hearsay statements. *See, e.g., United States v. Jefferson,* 714 F.2d 689, 696 (7th Cir.1983), and circuit court cases cited in text.

**5.** There may be alternatives to the "normal" practice of determining admissibility which the court, in its discretion in controlling the mode

*United States v. Azzarelli Construction Co.,* 612 F.2d 292, 297 (7th Cir.1979), *cert. denied,* 447 U.S. 920, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980). The trial judge may conditionally admit the statement if the record does not contain sufficient independent evidence at that point, subject to the government eventually discharging its burden of proof. *United States v. Santiago,* 582 F.2d 1128, 1131 (7th Cir.1978). If the court is satisfied that a preponderance of the independent evidence supports admission at the time admission is sought, the court should admit the statement and need not reconsider its determination in the absence of a subsequent change in circumstances. *See id.* However, on an appropriate motion by a defendant at the close of all the evidence, the court should reconsider its decision, in light of all the evidence, and determine whether admission is still supported by a preponderance. *United States v. James, supra,* 590 F.2d at 582. If the court decides that the balance has shifted so that a preponderance of the evidence no longer favors admission (or if the government has failed to "connect up" statements that were conditionally admitted), the court must then decide whether an instruction to the jury to disregard the statements would be sufficient to dispel prejudice or whether a mistrial is required. *See id.* at 583; *United States v. Santiago, supra,* 582 F.2d at 1131. This reconsideration of admissibility in light of the evidence in its entirety, on a timely and appropriate motion, is an important safeguard for a defendant because under the Federal Rules of Evidence, which became effective in the mid 1970's, the trial judge alone determines admissibility and the defendant may no longer argue that ruling on admissibility to the jury, *see id.* at 1133. Before the jury considers the statements unconditionally against an alleged coconspirator, he has the right to request a determination that a preponderance of *all* the evidence supports their admission.

In the instant case, Korenak and Joseph moved for acquittal at the end of trial on

the same grounds they had earlier voiced at the end of the government's case-in-chief, when the court had initially determined that Coe's statements were admissible against them. The court denied that motion, which constituted a *sub silentio* finding that admissibility was still sufficiently supported. *See United States v. Azzarelli Construction Co., supra,* 612 F.2d at 297. The court did not elaborate on the basis of its determination, but we can assume that the court at this point again improperly considered portions of the hearsay statements themselves in holding them to be admissible.

█ We must now determine whether the district court's improper consideration of the hearsay statements themselves was harmless error in light of all the independent evidence adduced at trial. Korenak and Joseph concede that a conspiracy and their involvement in it could be shown by circumstantial evidence, *see Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974); *United States v. Dalzotto,* 603 F.2d 642, 645 (7th Cir.), *cert. denied,* 444 U.S. 994, 100 S.Ct. 530, 62 L.Ed.2d 425 (1979), but contend that in the instant case, the conspiracy and their involvement can only be speculated by "piling inference upon inference," *Ingram v. United States,* 360 U.S. 672, 680, 79 S.Ct. 1314, 1320, 3 L.Ed.2d 1503 (1959). We cannot agree. A review of the record convinces us that the evidence independent of Coe's statements is sufficient to establish that it is more likely than not that all the appellants engaged in a joint venture and that Coe's statements (at least in part—see discussion below) were in the course and in furtherance of that joint venture. All three appellants drove from Kansas City to Springfield with a large amount of cash and three loaded firearms. Coe was a friend of Korenak, who in turn was a friend of Joseph. Klinefelter testified that the purpose of his contacting Coe was to lure him to Springfield for the purported purpose of

and order of proof, may follow. *See United States v. Vinson,* 606 F.2d 149, 152–53 (6th Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct.

1020, 62 L.Ed.2d 756 (1980) (discussing several procedural alternatives).

selling a large amount of marijuana. A prior transaction between Klinefelter and Coe, which had occurred less than a year earlier, had several characteristics in common with the events that occurred during the period of time leading up to the appellants' arrest—phone calls from Klinefelter in Springfield to Coe in Kansas City and a car trip from Kansas City to Springfield with a large amount of cash.[6] The nineteen phone calls between Klinefelter and Coe took place in the three week period before the trip to Springfield, and the trip was made immediately after the last call. Klinefelter's statements during the calls, which do not present the same hearsay problems as Coe's statements, include directions to the Denny's parking lot, which the car carrying the appellants followed.[7] All this strongly suggests that the appellants were engaged in a joint venture to purchase marijuana in Springfield.

Joseph's statement after his arrest and the evidence presented by the defense are insufficiently plausible to substantially affect the balance in favor of admissibility.[8] Joseph, for example, states that he carried a loaded weapon in part because he did not know the people with whom he would be dealing, but yet he was prepared to give these persons cash for cars he would have to leave in Springfield until he could retrieve them later with a trailer. Korenak testified that he had such a trailer and that they could not drive any of the cars back to Kansas City because the cars would lack proper license plates. Yet he did not bring the trailer even though he and Joseph contended they fully intended to buy cars. Joseph denied knowing Korenak's last name, yet Korenak testified that he knew Joseph well and had been to his house many times. Coe testified that during the long trip to Springfield, the appellants did not discuss the anticipated car sale. The alleged debt which Coe claims prompted his car sale charade was owing not from Klinefelter, but from Klinefelter's brother-in-law. If Coe had only wanted to meet Klinefelter in person to find out the brother-in-law's whereabouts or to convince Klinefelter to take responsibility for the debt, Coe could have simply told Klinefelter he had the money for the transaction without actually duping friends into providing the cash. Coe said he needed to show Klinefelter the cash in order to be taken to the place where Klinefelter kept his valuables and money; yet he claimed he intended to leave Korenak, Joseph and the cash at a motel near Denny's while he went off alone with Klinefelter. Coe disclaimed any intention of physically forcing Klinefelter to pay the disputed debt. If Coe intended only to use noncoercive powers of persuasion over Klinefelter, there would seem to be little reason to trick Klinefelter into taking him to the physical location of Klinefelter's money and valuables. Finally, Coe gives no explanation of how he intended to handle the inevitable awkward situation when Korenak and Joseph were confronted with a drug dealer instead of a car dealer in Denny's parking lot.

Korenak claims that even if the government had established by a preponderance of the evidence that a conspiracy existed and that all three appellants were members, Coe's statements in all of the phone calls except those made on the day of the arrest would still be inadmissible against Korenak and Joseph because there is no evidence that they were members before that point. During the course of the phone conversations, Coe never named any of his potential cash sources, but he did give some descrip-

---

6. While this prior "bad act" was admitted only against Coe and thus the jury could not consider this evidence in determining the guilt of Korenak or Joseph, the court could properly consider this evidence in making a preliminary determination of admissibility under Rule 104(a) of the Federal Rules of Evidence.

7. Klinefelter's statements were not admitted to show the truth of the matters asserted. It is undisputed that Klinefelter was engaged in a ruse to lure Coe and other potential buyers to Springfield.

8. While Joseph's statement was admitted only against him and was not to be considered by the jury against Coe and Korenak, the court could consider this evidence in making its determination of admissibility. See supra note 6.

tive information about them from time to time.[9] In his conversations of April 15, 1982, he clearly alludes to Korenak and Joseph by stating that he has a buyer with $12,000 and that they would arrive later that day in Springfield in a white Chevelle. In none of the conversations prior to that day did Coe make any reference from which it could be inferred that Korenak and Joseph had joined the conspiracy.

Korenak finds support for his proposition in our *Santiago* opinion, in which we quoted a lengthy passage from *United States v. Petrozziello,* 548 F.2d 20, 23 (1st Cir.1977), in support of our holding that the government's burden of proof with respect to admissibility of coconspirator's statements would be the ordinary civil standard. *See United States v. Santiago, supra,* 582 F.2d at 1134. In that quotation, the First Circuit stated:

> The ordinary civil standard is sufficient; if it is more likely than not that *the declarant and the defendant were members of a conspiracy when the hearsay statement was made,* and that the statement was in furtherance of the conspiracy, the hearsay is admissible.

*Id.* (emphasis added). However, to require that both the declarant and the defendant be members of the conspiracy at the time the statement was made would conflict with our prior decisions.

As this Court recently stated in *United States v. Hickey* (7 Cir., 1966), 360 F.2d 127, 140, a defendant who joined "the conspiracy at a later date, took the conspiracy as he found it. When he joined and actively participated in it he adopted the previous acts *and declarations* of his fellow conspirators. *United States v. Bucur* (7 Cir., 1952), 194 F.2d 297, 302. These acts became admissible against him, at least as they tended to show the nature and objectives of the conspiracy he joined."

*United States v. Santos,* 385 F.2d 43, 44–45 (7th Cir.1967), *cert. denied,* 390 U.S. 954, 88 S.Ct. 1048, 19 L.Ed.2d 1148 (1968) (emphasis added). *See also United States v. Cassity,* 631 F.2d 461, 464 (6th Cir.1980); *United States v. Anderson,* 532 F.2d 1218, 1230 (9th Cir.), *cert. denied,* 429 U.S. 839, 97 S.Ct. 111, 50 L.Ed.2d 107 (1976); *United States v. Ramirez,* 482 F.2d 807, 816 (2d Cir.), *cert. denied,* 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 475 (1973). These cases follow the teachings of the Supreme Court:

> With conspiracy thus fully established, the declarations and acts of the various members, even though made or done prior to the adherence of some to the conspiracy become admissible against all as declarations or acts of coconspirators in aid of the conspiracy.

*United States v. United States Gypsum Co.,* 333 U.S. 364, 393, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

■ The Sixth Circuit, like the Seventh Circuit, quoted from the *Petrozziello* opinion in adopting the preponderance of the evidence standard, *see United States v. Enright,* 579 F.2d 980, 986 (6th Cir.1978), and later was confronted with the same issue we now face. That court decided:

> In *Petrozziello,* the First Circuit adopted the preponderance of the evidence test for determining admissibility of co-conspirators' statements. Neither *Petrozziello* nor *Enright* concerned the time at which the co-conspirator statements were made. The quoted phrase from *Petrozziello* on which appellants rely is mere dictum and does not represent the law of this Circuit.

*United States v. Cassity, supra,* 631 F.2d at 464. We also hold that the *Petrozziello* quotation in our *Santiago* case does not change the formerly well-established principle that statements of coconspirators before a defendant joins the conspiracy are nonetheless admissible against him.[10]

---

**9.** For example, Coe stated at various points that one potential buyer had been arrested in Florida, one had just sold a tractor-trailer, and one worked for the phone company.

**10.** We acknowledge implicitly the continuing validity of this position in *United States v. Xheka,* 704 F.2d 974 (7th Cir.1983), in which we restated the *Santiago* principle without reference to a requirement that the defendant be a

**840**

■ Korenak also asserts, however, that not only were he and Joseph not members of the conspiracy at the time the first of Coe's statements were made, but that the conspiracy itself was not yet in existence. Statements by coconspirators made either before the formation of a conspiracy or after its termination are not admissible under the coconspirator hearsay exception. *See United States v. Morris,* 623 F.2d 145, 148 (10th Cir.), *cert. denied,* 449 U.S. 1065, 101 S.Ct. 793, 66 L.Ed.2d 609 (1980); *United States v. Vaught,* 485 F.2d 320, 323 (4th Cir.1973); *Christianson v. United States,* 226 F.2d 646, 653 (8th Cir.1955), *cert. denied,* 350 U.S. 994, 76 S.Ct. 543, 100 L.Ed. 859 (1956); *cf. Brown v. United States,* 150 U.S. 93, 98, 14 S.Ct. 37, 39, 37 L.Ed. 1010 (1893) (declarations admissible under this rule only when made while conspiracy is pending). The requirement that the statement be made "during the course of" the conspiracy seems itself to contemplate that the conspiracy be in existence at the time the statement is made.

■ The transcripts of the phone calls before April 15, 1982 show Coe earnestly trying, without apparent success, to round up buyers with the necessary cash for the marijuana buy. It cannot be said that Coe and Klinefelter were engaged in a joint venture. They were working at cross purposes, although Coe did not know it at the time. We conclude that the admission of Coe's statements to Klinefelter before April 15, 1982, should not have been admitted against Korenak and Joseph under the coconspirator exception. However, because we find that the substance of these statements was merely cumulative, adding nothing prejudicial to the statements Coe made on April 15, we find that the error in their admission was harmless beyond a reasonable doubt.

■ Considering the evidence of guilt against Korenak and Joseph, including Coe's taped statements of April 15, 1982, in the light most favorable to the government, we find that their convictions are supported by substantial evidence. The claim that

member of the conspiracy at the time the state-

there is sufficient evidence to support their convictions must therefore fail. *See Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

### B. *The Mishandled Fingerprint Evidence*

On May 21, 1982, Coe moved to compel the government to conduct fingerprint analysis on the firearm found in the glove compartment of the car in which Coe was riding at the time of his arrest. On June 25, 1982, at argument on Coe's motion, the government disclosed that the weapon had been mishandled when it was confiscated and any fingerprints would have been destroyed. Nevertheless, the government indicated that it would attempt to produce the weapon for testing before trial, and the court granted Coe's motion.

The government failed, however, to have the gun and ammunition tested by the time trial began on June 28, 1982. On cross-examination of one of the arresting officers, Coe brought out the mishandling of the weapon and the consequent destruction of any fingerprint evidence. The witness stated that his hurried confiscation of the firearm was prompted by concerns about the safety of the arresting officers. Coe later argued the lack of fingerprint evidence during summation to the jury. Coe contends that the court erred in failing to grant his motion for a mistrial because the government's failure to preserve and test for fingerprints on the weapon deprived him of exculpatory evidence and the opportunity to rebut the government's presumption of constructive possession.

■ We can quickly dispose of the latter part of Coe's contention. There was no "presumption" of constructive possession. The jury instruction, that Coe's claims give rise to such a presumption, merely *defines* constructive possession. The instruction further informed the jury that they may find the possession element of the offense if they found beyond a reasonable doubt that the defendant had actual or constructive possession. Another instruction cautioned

ment was made. *Id.* at 985.

that the government must prove the charges set forth in the indictment beyond a reasonable doubt and that the burden of proof never shifts to the defendant. Coe's argument that the destruction of the fingerprint evidence made the presumption of constructive possession irrebuttable fails because the government was not favored with such a presumption.

The remainder of Coe's argument finds its support in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. In *Brady,* the Supreme Court held that suppression by the prosecution of material evidence favorable to the accused, on request by the accused, violates due process, irrespective of the good or bad faith of the prosecution. *Id.* at 87, 83 S.Ct. at 1196–97. Coe relies primarily on a case expanding this principle to include destruction or loss of evidence that may have been material. In *United States v. Bryant,* 439 F.2d 642 (D.C.Cir.1971), the court recognized that the leading Supreme Court cases had dealt with non-disclosed evidence of known content, but reasoned that the *Brady* principle must also apply to non-disclosed evidence of unknown content to prevent the government from circumventing the principle by destroying evidence. *Id.* at 647–48. The *Bryant* analysis, even if convincing in its context, is inapplicable in this case for two main reasons.

First, *Bryant* involved a tape recording of a drug transaction that the government later lost. The government chose to make the recording, had the benefit of listening to it, then deprived the defense of the same opportunity by intentionally taking no steps to preserve it. *Id.* at 647. In the instant case, neither party had the benefit of the fingerprint analysis. This case would be more closely analogous to *Bryant* if the government had analyzed the gun for fingerprints, reviewed the report, then intentionally failed to preserve the report for the defense.

Second, the *Bryant* court prefaced its analysis by stating:

It is important to recognize that this is not a case of good faith effort to preserve

highly relevant evidence, frustrated only by inadvertent loss. Rather, it is a case of intentional non-preservation by an investigative official.... At issue, then, are the legal consequences of intentional non-preservation by investigative officials of highly relevant evidence, colored by clear reluctance even to admit that the evidence ever existed at all.

*Id.* The court found it significant that loss of the evidence was accompanied by "at very least a hint of bad faith," *id.,* holding that the circumstances of the loss are relevant to the question of proper sanctions, *id.* at 651. In the instant case, there is no indication that the arresting officer who confiscated the gun was not acting in good faith or that he intended to destroy the potential fingerprint evidence. Coe attacks the officer's asserted safety concerns, claiming that the appellants no longer posed a threat at the time the gun was seized. At most, however, this would establish only a good faith mistake in judgment under a stressful situation.

■■■ We conclude that the government's failure to preserve the fingerprint evidence on the seized weapon and its failure to test for fingerprints after the mishandling do not warrant the sanction of mistrial in this case.

■■■ Neither do we find that Coe's requested "missing witness" instruction was warranted. Before a party is entitled to such an instruction, he must show first, that the absent witness was particularly within the other party's power to produce, and, second, that the testimony of the witness would elucidate issues in the case. *United States v. Mahone,* 537 F.2d 922, 926–27 (7th Cir.), *cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976). Coe submitted the following proposed instruction, which the court rejected over objection:

It was peculiarly within the power of the government to produce Cecil McDougal, who could have given material testimony on an issue in the case, that being whether fingerprints of the Defendant, Robert Coe, Jr., appeared on the firearm he is alleged to have carried. The

government's failure to call Cecil McDougal may give rise to an inference that his testimony would be unfavorable to it. This instruction was in appropriate because the second part of the *Mahone* test was not satisfied. Cecil McDougal's testimony would consist either of a statement that he had not received the seized weapon for testing, or, if the government finally did submit the gun for testing, that it did not contain Coe's fingerprints. Both of these propositions were established through other testimony. A "missing witness" instruction is inappropriate when the unpresented testimony would be merely cumulative. *Id.* at 927. The government presented no evidence or argument either that the weapon had been analyzed for fingerprints or that Coe's prints were found on the gun. The government did not dispute the fact that fingerprints had been destroyed by mishandling. Coe was allowed to fully argue this point during summation. He was not further entitled to a "missing witness" instruction.

### C. *Other Claims of Error*

Each of the appellants claim prejudice from several additional alleged errors. Coe contends that the trial court erred in failing to weigh the probative value of his prior marijuana transaction against its prejudicial effect and that the limiting instruction the court gave to the jury on "other crimes" evidence was faulty. Korenak claims that the court erred in denying his motion to sever and that the government's involvement in the crime violated his due process rights. Joseph cites as error an inference made by the government during summation which he alleges was unsupported by the evidence, as well as the court's limitation on summation time, submission of the case to the jury the day following summation, and failure to instruct the jury in writing. We find no merit in these claims.

Coe additionally contends that if the convictions of Korenak and Joseph are reversed for insufficiency of the evidence, he is entitled to the same relief. Because we find sufficient evidence to support his co-conspirators' convictions, this argument is of no avail.

### IV

For the reasons above, we affirm the convictions of Coe, Korenak and Joseph.