**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James F. MAGNUS,**
**Defendant-Appellant.**

**No. 83–2707.**

United States Court of Appeals,
Seventh Circuit.

Argued May 29, 1984.

Decided Sept. 6, 1984.

---

Joseph S. Van Bokkelen, Goldsmith, Goodman, Ball & Van Bokkelen, Highland, Ind., for defendant-appellant.

Evan M. Spangler, Asst. U.S. Atty., R. Lawrence Steele, Jr., U.S. Atty., Hammond, Ind., for plaintiff-appellee.

Before POSNER and FLAUM, Circuit Judges, and CAMPBELL, Senior District Judge.*

FLAUM, Circuit Judge.

This is an appeal from the defendant's conviction of conspiracy to possess and dispose of goods stolen from interstate shipments and to transport those goods in interstate commerce. For the reasons set forth below, we affirm the defendant's conviction.

---

\* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, Eastern Division, is sitting by designation.

1. In his dealings with Envoy Stainless Steel Company, Murvine assumed the alias "Robert Martin."

In February 1982, William Kramer and Hershel Murvine obtained five stainless steel coils that had been stolen from a freight truck parked outside a restaurant in Hammond, Indiana. Murvine sold the coils on March 22 to Theodore Salmon. Shortly after the sale, Salmon discovered a tag on the coils that indicated that the coils may have been stolen, and he gave the tag to the Federal Bureau of Investigation (FBI). During its investigation, the FBI questioned Kramer, who admitted that the coils had been stolen and agreed to cooperate. However, in June 1982, without the FBI's knowledge, Kramer and Murvine acquired three stainless steel coils that had been stolen in Toledo, Ohio. Murvine then made arrangements with the defendant to find a purchaser for the steel. The defendant contacted Envoy Stainless Steel Company (Envoy), and on July 14, 1982, an employee of Envoy met with Murvine[1] and purchased the steel for $30,925.

After learning of the second illegal steel transaction on July 20, the FBI confronted Kramer, who agreed once again to cooperate with the government. Acting under the direction of the FBI, Kramer telephoned Murvine on November 9, 1982, and told him that a man named "Bromley" had a half million pounds of stolen steel to sell. Later that day, Murvine met with Kramer and "Bromley," an undercover FBI agent, to inspect the stolen steel at a warehouse in Valparaiso, Indiana.[2] During this meeting, Kramer gave Murvine an inventory of the stolen steel. Several hours later, Murvine telephoned Kramer and stated that he had given the inventory to the defendant, who said that he would sell half of the stolen steel by the following day. On November 10, Murvine again called Kramer and told him that the defendant had indicated that he had several prospective buyers for the steel. Murvine also said that

---

2. The steel that was stored in the Valparaiso warehouse had been obtained by Kramer, who had purchased stolen steel at the direction of the FBI as part of his cooperation with the government investigation into stolen steel conspiracy rings.

the defendant was aware that the steel was stolen. Several days later, on November 15, Kramer telephoned the defendant to talk about selling the Valparaiso steel and mentioned to him that the steel was stolen. The defendant responded by saying "okay" and by discussing arrangements for moving the steel after it was sold.

On November 25, 1982, the defendant received a letter from an attorney representing Envoy, stating that the three steel coils that were sold to Envoy in July had been stolen property. Thereafter, when Kramer called the defendant on December 3, the defendant expressed hesitancy regarding the sale of the Valparaiso steel and indicated that, "in light of ... what ha[d] happened," he was "cautious" in the sale. Government Ex. 44, at 2.

In an indictment issued on March 18, 1983, the defendant was charged with one count of conspiracy to possess and dispose of stolen goods and to transport those goods in interstate commerce and also with two counts of possession and interstate transportation of the steel coils stolen in Toledo in June 1982. During the defendant's jury trial, which began on July 25, 1983, the defendant moved for acquittal at the close of the government's case. The trial court granted the motion with respect to the two substantive counts of possession and transportation, but it denied the motion with respect to the conspiracy charge. The trial continued on the remaining conspiracy charge, and on July 27, 1983, the jury found the defendant guilty of conspiracy.

In appealing his conviction, the defendant raises several arguments. First, the defendant contends that the trial court erred in failing to strike evidence concerning the acquitted substantive charges.

Second, the defendant argues that the trial court gave inadequate jury instructions. Third, the defendant maintains that the admissible evidence was insufficient to support his conviction.

## I. ADMISSIBILITY OF EVIDENCE REGARDING ACQUITTED SUBSTANTIVE CHARGES

Prior to the trial court's grant of the defendant's motions for acquittal on the charges of possession and transportation of the three coils stolen in June 1982, two employees of Envoy testified that the defendant facilitated the sale of these coils to Envoy.[3] Further reference to the defendant's participation in the Envoy sale was presented during the direct examination of Kramer, when the government introduced evidence of a conversation between Kramer and Murvine that was recorded by Kramer on July 20, 1982, at the direction of the FBI. During this conversation, Kramer told Murvine that the sale of the steel coils to Envoy, a Philadelphia company, was dangerous because the steel originally came from a mill located about twenty miles from Philadelphia. Murvine indicated that he wanted the defendant to retrieve the steel, since the defendant had arranged the sale. In response to Kramer's inquiry, Murvine stated that he had told the defendant that the steel was stolen.

It is the defendant's position that, after the trial court acquitted the defendant on the substantive charges of possession and transportation of the coils stolen in June 1982, evidence relating to the defendant's alleged participation in these overt acts should have been stricken. The defendant

---

**3.** Morris Krevitz, the owner of Envoy, testified that he received a letter in July 1982 from Magnus Enterprises offering stainless steel coils. Krevitz contacted the defendant and made an offer of 66 cents a pound. After the defendant informed Krevitz that he was the high bidder, arrangements were made for an employee of Envoy, Joe Lucianetti, to meet with the defendant in Chicago in order to inspect the steel. At trial Lucianetti testified that his truck broke down on the way to Chicago, and he called the defendant and explained that he would be late. When Lucianetti called the defendant a second time, the defendant's receptionist stated that the defendant had an appointment and would not be available, but that Lucianetti was to meet with "Bob Martin." After Lucianetti arrived in Chicago, he met "Martin," inspected the steel, and closed the deal. It was established later in the trial that "Bob Martin" was an alias used by Murvine. See supra note 1.

points out that the trial court specifically found, under *United States v. Santiago*, 582 F.2d 1128 (7th Cir.1978), that the defendant became a member of a conspiracy in November 1982, and he contends that the pre-November hearsay evidence implicating him in the Envoy sale was therefore not admissible as co-conspirator declarations. Furthermore, according to the defendant, any evidence regarding the defendant's involvement in pre-November transactions should have been stricken in order to prevent relitigation of issues decided by the trial court's judgment of acquittal. The government, on the other hand, maintains that the pre-November hearsay evidence was admissible as co-conspirator declarations. In addition, the government argues that evidence regarding the defendant's involvement in pre-November transactions was admissible after the defendant's acquittal on the substantive counts because this evidence "revealed a significant aspect of the conspiracy which [the defendant] later joined." Appellee's Brief at 28.

A. Admissibility of Pre-November Statements as Co-Conspirator Declarations

In *United States v. Santiago*, 582 F.2d 1128 (7th Cir.1978), this court quoted with approval the First Circuit rule that a trial court may admit hearsay statements into evidence under the co-conspirator exception to the hearsay rule if it finds by a preponderance of the independent evidence that the declarant and the defendant were members of a conspiracy when the hearsay statement was made and that the statement was in furtherance of the conspiracy. *Id.* at 1134. In addition, *Santiago* confirmed that a trial court may conditionally admit co-conspirator statements before a conspiracy has been independently established, but if the court later finds that this condition has not been fulfilled, it must either instruct the jury to disregard the statements or declare a mistrial. *Id.* at 1131. Several years later, in *United States v. Coe*, 718 F.2d 830, 835, 839 (7th Cir. 1983), this court explained that the First Circuit quotation in *Santiago* did not change the well-established principle that, where the government proves the defend-

ant became a member of a conspiracy, statements of co-conspirators that were made even before the defendant joined the conspiracy are admissible against the defendant as co-conspirator declarations. The court in *Coe* also stressed that the government must prove that the statements it seeks to admit were made in the course of and in furtherance of the particular conspiracy that it has established. *Id.* at 835 ("[e]ven if Korenak and Joseph were indeed on a joint venture with Coe, statements Coe made regarding a *different* joint venture with *other* parties for *another* purpose would still be inadmissible") (emphasis in original).

The trial in the present case took place prior to the issuance of the *Coe* opinion. The trial court found by a preponderance of the independent evidence that the defendant was not a member of a conspiracy until November, and it concluded from this finding that Murvine's July 20 statements were inadmissible as co-conspirator declarations. See Trial Tr. at 265. This conclusion is incorrect in light of *Coe*'s holding that co-conspirator statements made before the defendant joins a conspiracy nevertheless may be admissible against the defendant. Yet, we are prevented from simply finding Murvine's statements admissible as co-conspirator declarations because the trial court specifically declined to make the finding, required by *Coe*, that the conspiracy that existed at the time of Murvine's July statements was the same conspiracy that the defendant joined in November. *See* Trial Tr. at 313, 372. This lack of findings need not detain us, however, because we conclude that the government used Murvine's statements for a purpose other than to prove the matter asserted, and thus the statements were admissible as non-hearsay.

The Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). It is clear that a statement that serves only to prove the declar-

ant's knowledge of facts otherwise established does not fall within this definition of hearsay. In *United States v. Parry*, 649 F.2d 292 (5th Cir.1981), the defendant's mother sought to testify that the defendant had stated that a person who had been telephoning him was a narcotics agent with whom the defendant was working. Concluding that the statement was not hearsay, the Fifth Circuit ruled that this testimony was not offered to prove that the caller was a narcotics agent or that the defendant was working with the agent, but to establish that the defendant had knowledge of the agent's identity when he spoke. *Id.* at 295. Similarly, in *United States v. Bobo*, 586 F.2d 355 (5th Cir.1978), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1546, 59 L.Ed.2d 795 (1979), a witness testified that a co-conspirator told her that the defendant had been arrested on a drug charge and that a search warrant used during the arrest indicated the existence of an informant. The Fifth Circuit ruled that this statement was not hearsay because it was not used to prove that the defendant had been arrested. Instead, the testimony indicated that the co-conspirator was concerned about informants, and it "tended to prove the existence of the conspiracy in that it evidenced a desire for secrecy and a concern that the declarant's activity might be reported to the police." *Id.* at 372.

In the present case, the government charged the defendant with membership in a conspiracy that began in February 1982, continued through June and July 1982, and ended in early December 1982. Thus, regardless of the point at which the defendant joined the conspiracy, the government had to show that the conspiracy existed in June and July, when both Murvine and Kramer knowingly conspired to sell stolen steel to Envoy.[4] Critical to a showing of Murvine's knowledge with regard to the Envoy sale were his July 20 statements, which indicated that Murvine knew that the Envoy transaction was illegal and that he feared that the illegality might be discovered. We therefore find that the July 20 statements, like the statements at issue in *Bobo*, tended to prove the existence of the alleged conspiracy in June and July, and they were admissible during the defendant's conspiracy prosecution as nonhearsay.[5]

In light of the limited admissibility of Murvine's July 20 statements as circumstantial evidence of Murvine's knowledge, the proper course for the trial court was to give a limiting instruction regarding this evidence. *See United States v. Parry*, 649 F.2d at 295 ("[w]here evidence is admissible for one purpose but not for another, the accepted practice is to admit the evidence with instructions that the jury consider the evidence only for the permissible purpose"). Failure to give such an instruction, however, is not prejudicial error when it can be said "with fair assurance ... that the judgment was not substantially swayed" by this failure. *Kotteakos v. United States*, 328 U.S. 750, 764, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557 (1946). This standard of review was applied in *United States v. Ruffin*, 575 F.2d 346, 358–61 (2d Cir.1978), where the trial court erroneously admitted hearsay testimony regarding the defendant's diversion of corporate funds. In concluding that this error influenced the jury's verdict and was thus prejudicial, the Second Circuit considered several factors.

**4.** It is settled law that a defendant can be convicted of conspiracy and be held liable for all the overt actions of other conspirators that were intended to advance the scheme, even actions that occurred before the defendant joined the conspiracy. *United States v. Covelli*, 738 F.2d 847, 859 n. 16 (7th Cir.1984).

**5.** After the trial court acquitted the defendant on the substantive counts, the court indicated in a sidebar conference that, during the conspiracy prosecution, Murvine's July 20 statements were no longer considered to be hearsay. Trial Tr. at 319.

The importance of the July 20 conversation to the government's task of proving Murvine's knowing agreement to sell stolen steel in June and July overrides the danger of prejudice to the defendant by the admission of this conversation. Thus, we find that the trial court did not abuse its discretion under Fed.R.Evid. 403, which states that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

The court first noted that the magnitude of the diversion could have had a strong impact on the jury. Furthermore, the court reasoned that the diversion must have been on the forefront of the jurors' minds when they retired to deliberate because the prosecutor had dwelt upon the diversion in his closing arguments. In addition, the court observed that the hearsay evidence was introduced during the government's rebuttal case, which suggested to the jury that the evidence was important because it fulfilled the "pressing need to answer specific points raised during the defense's presentation of its case." *Id.* at 360.

The facts in the present case are very different from those in *Ruffin,* and they present less danger of improper influence upon the jury. The recording of the July 20 conversation between Kramer and Murvine was the only item of evidence introduced at trial indicating that the defendant was aware at the time of the Envoy sale that the offered steel had been stolen. After the trial court acquitted the defendant of the substantive charges, the prosecutors never referred to this evidence to prove this issue of knowledge.[6] Thus, the defendant testified, with no subsequent government contradiction, that he first learned that the Envoy steel was stolen property when he received a letter from Envoy's attorney in late November. Furthermore, in closing argument, the government made no reference to the defendant's knowledge of the stolen nature of the Envoy steel. In addition, before reading the indictment to the jury, the trial court excised one sentence that alleged that Murvine told the defendant in July that the Envoy steel had been stolen. During deliberations, the jury did not ask to listen to the tape of the July 20 conversation. Instead, the jury requested tapes of the November and December conversations between Kramer and the defendant. Minutes after hearing these tapes, the jury returned a verdict of guilty on the conspiracy count.[7] In light of this record, we are satisfied that the July 20 reference to the defendant's knowledge of the illegality of the Envoy sale did not form a substantial basis for the jury's verdict. We therefore conclude "with fair assurance ... that the judgment was not substantially swayed" by the trial court's failure to give a limiting instruction with respect to Murvine's July 20 statements.

■ Thus, we hold that, even if Murvine's July 20 statements were not admissible under the co-conspirator hearsay exception, the trial court was not required either to instruct the jury to disregard these statements or to declare a mistrial because the statements were admissible as nonhearsay. Although this evidentiary situation clearly required a limiting instruction, we find that, under the facts of this case, the absence of such an instruction constituted harmless error.

---

6. During the direct examination of the defendant, a sidebar conference took place, at which the defense attorney admitted that he had opened the door to cross-examination questions regarding the defendant's association with Murvine. Trial Tr. at 312. Rather than allowing specific cross-examination regarding the defendant's knowledge at the time of the Envoy transaction, the trial court limited the prosecutors to asking whether the defendant had ever learned that the Envoy steel had been stolen. Trial Tr. at 324. The court acted properly in allowing this limited inquiry because subsequent knowledge of the Envoy illegality was probative of the defendant's motives in the November Valparaiso transaction.

7. The jury retired to deliberate at 5:52 p.m. on July 27, 1983. At 7:00 p.m., it requested transcripts of all the tapes of conversations, a copy of the report of the FBI interview with the defendant, and the transcript of the defendant's cross-examination. After conferring with counsel, the trial court explained to the jury that the transcripts of the conversations and the FBI report were not in evidence and the transcript of the cross-examination was not available. The court told the jury that tapes of conversations could be replayed at the jury's request. Trial Tr. at 450–53.

At 9:10 p.m., the jury requested a replaying of the two conversations between the defendant and Kramer that took place in November and December. The jury reassembled in the courtroom, and the court replayed the tapes in the presence of counsel and the defendant. The jury was escorted from the courtroom at 9:20 p.m., and it announced its verdict at 9:35 p.m.

### B. Striking Evidence in Order to Prevent Relitigation of Issues

 It is well-settled that the doctrine of collateral estoppel applies to criminal prosecutions and prohibits the relitigation of issues decided in a defendant's favor by a valid final judgment. *See, e.g., Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970); *United States v. Phillips,* 401 F.2d 301, 304 (7th Cir.1968). This doctrine clearly comes into play when a defendant has been tried and acquitted of one offense and then faces a new trial at which the government seeks to admit evidence showing the defendant's guilt on the acquitted offense. *See United States v. Mespoulede,* 597 F.2d 329 (2d Cir.1979); *United States v. Phillips,* 401 F.2d 301 (7th Cir.1968); *United States v. Kramer,* 289 F.2d 909 (2d Cir.1961). It is also clear that collateral estoppel does not operate to disallow inconsistent verdicts reached by a jury on several counts of one indictment. *See United States v. Buttram,* 432 F.Supp. 1269 (W.D.Pa.1977), *aff'd without opinion,* 568 F.2d 770 (3d Cir.), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 84 (1978). *See also United States v. Russo,* 335 F.2d 299, 301 (7th Cir.1964) (where several counts were presented to one jury, "[a] verdict of acquittal on one count does not invalidate a verdict of guilty on another count, even where the same evidence is offered in support of each count"), *cert. denied,* 379 U.S. 962, 85 S.Ct. 651 (1965).

 It is uncertain, however, whether collateral estoppel is applicable in a situation such as that presented by the case before us, where a trial court acquits the defendant on one or more counts of an indictment, and the defendant's guilt as to the remaining counts is left to the decision of the jury. In *United States v. Caucci,* 635 F.2d 441 (5th Cir.), *cert. denied,* 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 108 (1981), the trial court acquitted the defend-

ant of one count at the close of all the evidence, before closing arguments, and the jury returned guilty verdicts on the remaining two counts. The defendant argued on appeal that the trial court erred in allowing the prosecutor, during his closing argument, to refer to the issue that was decided by the judgment of acquittal. The Fifth Circuit rejected this argument, concluding that collateral estoppel cannot be applied in the context of a single trial. Id. at 448. The Fourth Circuit, however, took a different approach in *United States v. Woods,* 484 F.2d 127 (4th Cir.1973), *cert. denied,* 415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875 (1974), where the defendant was charged with physical abuse of two children. At the close of the government's case, the trial court acquitted the defendant on the counts pertaining to one of the children. Yet, evidence relating to abuse of this child remained before the jurors as they considered the government's case regarding the second child. The Fourth Circuit considered the doctrine of collateral estoppel, but concluded that the verdict of acquittal with respect to abuse of the first child did not constitute an adjudication that the defendant committed no acts of misconduct against this child. Thus, evidence of this misconduct, which was relevant to the government's case regarding the second child, properly could be considered by the jury. *Id.* at 137–38.[8] In the present case, we need not decide whether collateral estoppel is applicable in the context of a single trial, for we are satisfied that, even if this doctrine applies, the government did not relitigate to the jury any issue that was adjudicated by the trial court when it acquitted the defendant of the substantive charges.

In granting the defendant's motions for acquittal on the substantive charges, the

---

8. *See also United States v. Friedman,* 506 F.2d 511, 512, 517 (8th Cir.1974) (where trial court acquitted defendant of substantive charges at close of all evidence, and same evidence was used by government in attempt to prove conspiracy charge, collateral estoppel did not re-

quire reversal of conspiracy conviction because issue of guilt on substantive counts was not the same as issue of guilt on conspiracy count), *cert. denied,* 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975).

trial court excluded the pre-November conversations on hearsay grounds and ruled that there was insufficient evidence to show guilty knowledge or intent on the part of the defendant with respect to the Envoy steel transaction. If collateral estoppel were to apply, this adjudication of acquittal would have barred the government from attempting to establish, in its conspiracy case, that at the time of the defendant's participation in the Envoy sale, the defendant knew that the steel was stolen. Our review of the record indicates that no such attempt was made. During cross-examination of the defendant, the government asked when the defendant first knew that the Envoy steel was stolen, and the defendant responded that he learned this information in late November 1982. The government did not present any rebuttal testimony to the contrary, nor did it argue the issue to the jury. Indeed, after the acquittals on the substantive counts, the focus of the government's case shifted to the November Valparaiso transaction, and the government sought to prove the defendant's knowing participation during that phase of the conspiracy. The fact that the July 20 conversation, in which Murvine spoke of the defendant's knowledge that the Envoy steel was stolen, remained in evidence does not indicate that the government relitigated the issue. As we determined in the prior section of this opinion, this evidence, as nonhearsay, was probative of the existence of the conspiracy in July 1982 and was properly before the jury.

## II. JURY INSTRUCTIONS

The defendant contends that the trial court's instructions to the jury improperly directed the jury's attention to the factual matters that the court had already decided when it acquitted the defendant on the substantive charges. Furthermore, the defendant argues that the trial court erred in failing to give the jury a number of the defendant's proposed instructions.

As determined in our discussion above, the only factual matter decided by the trial court in acquitting the defendant was that there was insufficient nonhearsay evidence to prove that the defendant knew that the steel sold to Envoy was stolen. If the doctrine of collateral estoppel were applied, the jury would have been barred from deciding this issue, and the appropriate instruction would have been a limiting instruction with regard to the use of Murvine's July 20 statements, which constituted the only evidence relating to this issue. However, as we decided above, the absence of this instruction was harmless error.

On the issue of the trial court's failure to give the defendant's proposed instructions, the defendant argues that the trial court erred in refusing to give Defendant's Instruction Nos. 5, 6, 15, 16, 18, 21, 22, and 23. We find first, that the defense counsel did not object to the trial court's refusal of Defendant's Instruction Nos. 15, 18, 21, and 23, and he therefore failed to preserve this matter for appeal. Fed.R. Crim.P. 30. *See also United States v. Hyman*, 741 F.2d 906, 911 (7th Cir.1984). Second, we find that the court's failure to give Defendant's Instruction No. 5, the "two inferences" instruction, was not error because the other instructions given by the court adequately discussed the government's obligation to prove guilt beyond a reasonable doubt. *United States v. Maenza*, 475 F.2d 251, 254 (7th Cir.1973). Finally, we find that the substance of Defendant's Instruction Nos. 6, 16, and 22 were adequately covered by the trial court's Final Instruction No. 7, which described the elements of the crime of conspiracy. When a trial court has given a substantially accurate instruction that covers adequately the subjects addressed by a proposed instruction, the court will not be reversed for failing to use the exact language tendered by counsel. *United States v. Hyman*, 741 F.2d at 911; *United States v. Zarattini*, 552 F.2d 753, 759 (7th Cir.), *cert. denied*, 431 U.S. 942, 97 S.Ct. 2661, 53 L.Ed.2d 262 (1977).

### III. SUFFICIENCY OF THE EVIDENCE

In the final point raised on this appeal, the defendant argues that the evidence was insufficient to sustain his conviction on the conspiracy count. Specifically, the defendant contends that the two conversations between Kramer and the defendant, which took place in November and December 1982, failed to show that the defendant took any action to advance the conspiracy after Kramer told him that the Valparaiso steel was stolen. The defendant also points out that, at the time of these conversations, Kramer was a government informant, not a co-conspirator. Hence, according to the defendant, Kramer did not agree to do anything with the defendant, and his conversations with the defendant were inadmissible to show the existence of the conspiracy.

 Although Kramer was not a co-conspirator in November, his statements to the defendant during this time were offered not for their truth, but only to show the representations that were made to the defendant. The defendant's statements were admissible as party admissions, and they demonstrated that the defendant had agreed with Murvine to participate in an illegal sale. The trial court determined by a preponderance of this nonhearsay evidence that a conspiracy between Murvine and the defendant existed in November, and the statements of Murvine in his November conversations with Kramer were thus admissible under the co-conspirator exception to the hearsay rule. Considering this evidence and the evidence of pre-November activities in the light most favorable to the government, we conclude that any rational trier of fact could have found beyond a reasonable doubt that the defendant was a member of the conspiracy charged in the indictment. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). *See also Jentges v. Milwaukee County Circuit Court,* 733 F.2d 1238, 1240 (7th Cir.1984).

Accordingly, we affirm the defendant's conviction.