UNITED STATES of America, Plaintiff-Appellee,

v.

Scott PARRY, Defendant-Appellant.

No. 80–5341.

United States Court of Appeals, Fifth Circuit. Unit B

June 29, 1981.

Howard Skinner, Asst. Federal Public Defender, Jacksonville, Fla., for defendant-appellant.

Ernest D. Mueller, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before MORGAN, RONEY and KRAVITCH, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge.

The question in this case is whether the district court erred in excluding certain testimony by the appellant's mother as inadmissible hearsay. We conclude that the evidence should have been admitted and therefore reverse appellant's convictions and remand for a new trial.

Scott Parry was tried before a jury and convicted in consolidated cases of conspiring to distribute phenycyclidine hydrochloride (PCP) and of possessing with intent to distribute PCP and dl-methamphetamine hydrochloride. At trial the government presented its case primarily through the testimony of two undercover agents with the Drug Enforcement Administration, Robert Starratt and Douglas Driver. Essentially, these agents testified that Parry had acted as a middleman or intermediary in arranging three separate drug transactions between the agents and certain individuals who had drugs for sale.

In his defense to these charges, Parry did not deny that he had participated in the drug transactions described by the DEA agents but argued that, during each of these transactions, he had proceeded upon the good faith belief that he was working *for* the agents, assisting them in locating drug dealers. As proof of the purity of his intentions, Parry testified that he had learned that Starratt was an undercover agent several days before he had met the agent or engaged in any of the activities alleged in the indictment. Although Parry conceded that he never entered into any formal agreement to cooperate with the agents, he argued that, at least from his perspective, there was an implied understanding that he would lead the agents to drug sources.

In support of his position that he had known from the outset of the agents' identities, Parry related a conversation he had with his mother shortly after he met Agent Starratt in October 1974 and well in advance of his arrest in January 1975. Parry testified that, in response to his mother's inquiry, he had stated that the person who had frequently telephoned her home asking to speak to Parry was a narcotics agent with whom he was then working. In an effort to corroborate his story, Parry called his mother as a witness. Outside the presence of the jury his mother testified that

> Scott received several phone calls and I would tell Scott that Bob called and I questioned Scott on who he was because I thought at first it was a painting job and Scott had said—told me that his name was Bob Starratt, he was working with him, he was a narcotics agent, he was working with and not to worry.

Although the government voiced no objection to the proffered testimony, the court ruled that Parry's mother could not testify to "any conversations that she had with her son or that her son had with her." Parry's objection that his mother's testimony was not hearsay and therefore should not be excluded was overruled by the district court.

It is our judgment that the court erred in excluding the proffered testimony. First, we find that Parry's out-of-court statement to his mother is simply outside the scope of the hearsay prohibition. Rule 801(c) of the Federal Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The reasons for excluding hearsay are clear: when an out-of-court statement is offered as a testimonial assertion of the truth of the matter stated, we are vitally interested in the credibility of the out-of-court declarant. Because a statement made out of court is not exposed to the normal credibility safeguards of oath, presence at trial, and cross-examination, the jury has no basis for evaluating the declarant's trustworthiness and thus his statement is considered unreliable. McCormick on Evidence § 245 (2d ed. 1972); 5 Wigmore on Evidence

§§ 1361, 1362 (1974); *United States v. Carter*, 491 F.2d 625 (5th Cir. 1974). Implicit in both the definition and justification for the rule, however, is the recognition that whenever an out-of-court statement is offered for some purpose other than to prove the truth of the matter asserted, the value of the statement does not rest upon the declarant's credibility and, therefore, is not subject to attack as hearsay.

▇ Parry contends, and we agree, that in this case the excluded testimony was not offered to evidence the truth of the matter asserted in the out-of-court statement. Parry's mother sought to testify that her son had stated that the person who had been telephoning her home was a narcotics agent and that he, Parry, was working with the agent. As Parry explained to the district court, this statement was not offered to prove that the caller was a narcotics agent or that Parry was working with the agent, but to establish that Parry had knowledge of the agent's identity when he spoke. In other words, Parry offered the statement as the basis for a circumstantial inference by the jury that, if this statement was in fact made—a question which the in-court witness could testify to while under oath, before the jury, and subject to cross-examination—then Parry probably knew of the agent's identity. Using an out-of-court utterance as circumstantial evidence of the declarant's knowledge of the existence of some fact, rather than as testimonial evidence of the truth of the matter asserted, does not offend the hearsay rule. *McCormick, supra,* § 249; 6 Wigmore, *supra,* § 1790; *see e. g., United States v. Enstam,* 622 F.2d 857, 865 (5th Cir. 1980); *cert. denied,* —— U.S. ——, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981); *United States v. Bankston,* 603 F.2d 528, 531 n. 1 (5th Cir. 1979); *United States v. Bobo,* 586 F.2d 355, 371–72 (5th Cir. 1978). Contrary to the government's position, the danger that the jury could improperly use the out-of-court statement as an assertion to be believed does not render the statement inadmissible. Where evidence is admissible for one purpose·but not for another, the accepted practice is to admit the evidence with instruc-

tions that the jury consider the evidence only for the permissible purpose. Wigmore, *supra,* § 13. A different rule applies only where the probative value of the evidence when used for its allowable purpose is outweighed by the prejudice that would result if the evidence were used for its improper purpose. *United States v. Brown,* 490 F.2d 758, 764–65 (D.C.Cir.1973). In this case the dangers associated with the jury's possible misuse of the out-of-court statement are not sufficient to require that the evidence be excluded. The court should admit the statement and give a limiting instruction that the statement is admissible only as circumstantial evidence of Parry's knowledge and not as evidence of the truth of the matter asserted.

▇ Second, we are of the view that the out-of-court utterance was admissible as a prior consistent statement offered to rebut the government's charge that Parry had fabricated his story. Rule 801(d)(1)(B) of the Federal Rules of Evidence provides that

> A statement is not hearsay if (1) . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive. . . .

Prior to Parry's testimony concerning his alleged conversation with his mother, and in apparent anticipation of this testimony, the government during its case-in-chief elicited numerous statements by the DEA agents that Parry was not working for the·government agents, did not believe that he was working for the agents, and did not know of the agents' true identities. In addition, following Parry's testimony about his conversation with his mother, the government engaged in a line of questioning that reiterated its position that Parry was unaware of the agents' identities and did not believe that he was helping the agents. The clear implication of the government's evidence and of its response to Parry's testimony was

that Parry had fabricated his defense of lack of criminal intent. Under Rule 801(d)(1)(B), this implied charge of recent fabrication permitted Parry to introduce as substantive evidence his prior consistent statement to his mother.

 The government contends that because Parry's motive for fabricating his story at trial also existed at the time he made the out-of-court statement to his mother, the prior statement lacked probative value and should not have been admitted. This same argument has previously been rejected by the Fifth Circuit. In *United States v. Gandy*, 469 F.2d 1134 (5th Cir. 1972), we permitted a party to introduce evidence of a prior statement even though the statement was made after the motive for fabrication had arisen. We specifically followed *Gandy* in *United States v. Williams*, 573 F.2d 284, 289 n. 3 (5th Cir. 1978), and we are neither disposed nor authorized to depart from its holding here.

■ Finally, the government argues that even if the district court erred in excluding the proffered testimony of Parry's mother, the error was harmless because her narration of the alleged out-of-court conversation was merely cumulative of evidence already testified to by Parry. We reject this characterization of the proffered testimony. Rather than being merely cumulative, the excluded testimony was the only available evidence that could corroborate Parry's story that he had known of the agents' identities, a story the jury may have found self-serving if not farfetched. Parry's defense, discounted by the jury when standing alone, may have been believed when bolstered by his mother's testimony. *See United States v. Rubin*, 591 F.2d 278, 283 (5th Cir. 1979). Moreover, the jury may well have assumed that because Parry did not ask his mother to confirm the existence of the critical conversation, the conversation probably never occurred. Because we are unable to say with fair assurance that the jury was not substantially influenced by the error, *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946), we must reverse Parry's conviction and remand for a new trial.

REVERSED and REMANDED.