**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**March 18, 2005**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 04-30446
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee

versus

CARL PRATT,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:03-CR-50075-ALL
_____

Before JOLLY and DAVIS, Circuit Judges, and ENGELHARDT, District Judge.[1]

PER CURIAM:[2]

Carl Pratt appeals his conviction and sentence for being a felon in possession of a firearm. He argues that the district court erred by excluding evidence of his lack of intent to possess a weapon and that his sentence was improperly enhanced based on facts that were neither charged in the indictment nor stipulated. We AFFIRM.

----

[1]District Judge of the Eastern District of Louisiana, sitting by designation.

[2]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I

During the execution of a search warrant at Pratt's residence, law enforcement officers found a shotgun underneath the bed in the master bedroom. Pratt, a convicted felon, was charged with possession of the weapon. A jury found him guilty, and he was sentenced to 104 months of imprisonment and a three-year term of supervised release.

## II

On appeal, Pratt argues that the district court erred by excluding evidence of his lack of intent to possess the shotgun and that his sentence was improperly enhanced based on facts that were neither charged in the indictment nor stipulated. We discuss each issue separately.

## A

We address first the challenged evidentiary ruling. At trial, Government witnesses testified that when the shotgun was found in Pratt's residence during the execution of the search warrant in August 2002, Pratt stated that he knew the gun was there, and knew that he was not supposed to have it, but that he had borrowed it from a friend for protection of his family.

The defense called Pratt's wife's cousin as a witness. When defense counsel asked him to describe an incident in 2001 when Pratt stated his belief that the gun had been removed from his residence, the district court sustained the Government's hearsay objection.

The defense then called Pratt's wife to testify. When she was asked about a statement her husband made in 2001 reflecting his belief that the gun was missing, the district court sustained the Government's hearsay objection.

Pratt then took the stand in his own defense. He testified that he looked for the gun to dispose of it because he knew that he was subject to search by the probation office, but could not find it; that he asked his wife what had happened to the gun when he found that it was missing; that he accused one of his wife's cousins of stealing the gun; and that he did not know the gun was under the bed when the search warrant was executed.

In a proffer, Pratt's wife testified that her cousin watched their house when they took a trip; that, when they returned, Pratt looked for the gun but could not find it; and that Pratt accused her cousin of having taken the gun. She testified that Pratt therefore did not know the gun was in the house on the day the search warrant was executed, because he thought it had been stolen.

Pratt argues that the district court erred by excluding the testimony of his wife and her cousin that he did not know the gun was in his house when the search warrant was executed, because he thought the gun had been stolen. Ordinarily, we review a district court's evidentiary rulings for abuse of discretion. United States v. Avants, 367 F.3d 433, 443 (5th Cir. 2004). However, that standard applies only to the grounds proffered at trial. See United States v. Ahmad, 101 F.3d 386, 392 (5th Cir. 1996) ("Our

3

examination of the exclusion of evidence is limited to the grounds that were proffered for its admission at trial."). "[I]n the absence of a proper objection, we review only for plain error." Avants, 367 F.3d at 443. Under the plain error standard, we have the discretion to correct a plain error that affects the defendant's substantial rights, but generally will not do so unless a failure to correct the error will seriously affect the fairness, integrity, or public reputation of judicial proceedings. Fed. R. Civ. P. 52(b); Avants, 367 F.3d at 443, 446; United States v. Calverley, 37 F.3d 160, 163-64 (5th Cir. 1994) (en banc).

At trial, Pratt objected to the exclusion of the evidence on two grounds: (1) the evidence is not hearsay, because it was not offered to prove that the gun had been stolen, but instead to show his lack of knowledge that the gun was still in the house;[3] and (2) if the testimony is hearsay, it is within the exception of Federal Rule of Evidence 803(3) because it was offered to establish his state of mind negating his intent to possess the gun.[4]

---

[3]Federal Rule of Evidence 801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

[4]Rule 803(3) is one of the exceptions to the hearsay rule. It authorizes the admission of "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will."

4

On appeal, Pratt reiterates his argument that the excluded testimony is not hearsay because it was not offered to prove that the gun had been stolen, but to show his lack of intent to possess the gun, based on his belief that it had been stolen.[5]  For the first time on appeal, Pratt also argues that the testimony should have been admitted under Federal Rule of Evidence 801(d)(1)(B) as a prior consistent statement to rebut the Government's argument that he fabricated his testimony.[6]  The latter contention is reviewed only for plain error because Pratt did not assert Rule 801(d)(1)(B) as a basis for admitting the evidence at trial. Avants, 367 F.3d at 443.

In support of his contentions, Pratt relies on several Fifth Circuit opinions.  In the first, United States v. Jackson, 621 F.2d 216 (5th Cir. 1980), the defendant, a bank president, was convicted for making a false notation on a loan memo regarding the purpose of the loan.  His defense was that the notation was not made with knowledge of its falsity because the borrower had told him that was

---

[5]The Government asserts that Pratt has abandoned his contention that the testimony is admissible under Rule 803(3).  We disagree.  Although Pratt's brief cites Rule 803(3) only in the summary of the argument, he nevertheless argues that the testimony was offered to establish his state of mind negating his intent to possess the gun, and not for the truth of whether the gun had indeed been stolen.

[6]Rule 801(d)(1)(B) provides that a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive".

5

the purpose of the loan. The defendant attempted to testify about that conversation with the borrower at trial, but the district court excluded the proffered testimony on hearsay grounds. Our court held that the district court improperly excluded the testimony because it was not offered for its truth, but was offered to establish what the defendant thought was the purpose of the loan, and therefore it was not hearsay under Rule 801. Id. at 219. The court also held that the Government had breached a pretrial agreement with the defendant; that the defendant was prejudiced by the breach; and that the district court's failure to balance the potential for prejudice against the reason for the breach constituted reversible error. Id. at 221.

Pratt also relies on United States v. Parry, 649 F.2d 292 (5th Cir. 1981). In that case, our court found reversible error in the exclusion of an out-of-court statement made by the defendant to his mother. The defendant was charged with drug offenses. Two undercover agents testified for the Government that the defendant had acted as an intermediary in arranging drug transactions between the agents and the sellers. Parry's defense was that he knew that the agents were undercover law enforcement officers and that he was working for them, assisting them in locating drug dealers. He testified that, shortly after he met one of the agents, in response to an inquiry from his mother about the identity of the person who had frequently telephoned her home asking to speak to him, he told her that it was a narcotics agent with whom he was working. He

6

called his mother as a witness, but the trial court excluded her testimony on hearsay grounds. Our court held that Parry's out-of-court statement to his mother was not hearsay under the definition in Rule 801(c), because it was not offered to prove the truth of the matter asserted, but was instead offered to establish that Parry had knowledge of the agent's identity. Id. at 294-95. The court also held that the statement was admissible under Rule 801(d)(1)(B) as a prior consistent statement offered to rebut the Government's charge that Parry had fabricated his story. Id. at 295-96. The court concluded that the error was not harmless because it was the only available evidence that could corroborate Parry's story that he had known of the agents' identities. Id. at 296. Moreover, because Parry had testified about his conversation with his mother, the court stated that the jury might have assumed that the conversation did not occur because Parry did not call his mother to corroborate his testimony. Id.

Relying on Parry, the defendant in United States v. Gonzalez, 700 F.2d 196 (5th Cir. 1983), also cited by Pratt, argued that the court committed reversible error by excluding a prior consistent statement that he had made to his wife. The defendant was charged with drug offenses. He drove a co-defendant's car from Laredo, Texas to McAllen, Texas. At trial, he testified that he did not know why he was asked to drive the car to McAllen, but that he did it as a favor and wanted to see some farm implements in McAllen. Id. at 200. The district court excluded the testimony of his wife

7

that he had told her that her brother had asked him to bring the car to McAllen and that he was going to look at machinery while there.  Id. at 201.  Our court stated that the testimony was admissible under Rule 801(d)(1)(B), because the defendant "offered his wife's testimony in response to the government's evidence and in anticipation of the government's inevitable attack on his own testimony."  Id. at 202.  The court held, however, that the error was harmless because the defendant presented to the jury his reason for driving to McAllen, and the jury rejected it.  Id.  The court distinguished Parry on the grounds that the evidence was more closely balanced in that case.  It also noted that Gonzalez's story was "incredible on its face."  Id.  Finally, the court found it significant that before Parry's mother's testimony was excluded, Parry had told the jury that he had told his mother that he was working with undercover narcotics agents.  Gonzalez, however, "never told the jury that he had told his wife the same story."  Id.

The final case relied on by Pratt is United States v. Cantu, 876 F.2d 1134 (5th Cir. 1989).  The defendant was charged with drug crimes and his defense was entrapment.  The district court did not allow the defendant to testify about a confidential informant's alleged persistence in trying to get him to secure customers for the informant's illicit drug activities, holding that the statements were hearsay.  Id. at 1136.  Our court held that the proffered statements were not hearsay because they were offered as

evidence of the defendant's state of mind, and their significance was "solely in the fact that they were made; the truth of the statements is irrelevant." Id. at 1137. The error was not harmless because it "deprived Cantu of a critical element of his entrapment defense." Id.

The Government argues that Pratt's own trial testimony is inconsistent with regard to his alleged belief that the gun had been stolen. On the one hand, he testified that he accused his wife's cousin of stealing the gun because when he looked for the gun and did not see it under the bed, he thought the gun was gone; and that he was surprised when the officers found the gun because he had thought for at least six months, maybe longer, that the gun was gone. On the other hand, he testified later that the gun was a "house gun" and that when he "placed that gun there, I never went back to touch it or look at it or nothing. I placed it there for the protection of my home and my family." The Government asserts that Pratt's belief that the gun was no longer under the bed because it had been stolen was a mistaken belief based on his stated inability to find it, and that the only purpose his wife's testimony could have served was as corroboration of Pratt's testimony that months before he was arrested he accused his wife's cousin of stealing the gun. The Government maintains that that circumstance is only marginally relevant to Pratt's knowledge nine months later.

The Government argues that the testimony was inadmissible under Rule 803(3) because it was offered to prove that Pratt had the belief that the gun had been stolen at some distant time in the past, which was irrelevant to his belief in August 2002. It asserts that Pratt's wife's testimony about events nine months earlier is not evidence of his state of mind in August 2002.

The Government argues that the testimony was not admissible under Rule 801(d)(1)(B) (which Pratt did not assert as a basis for admissibility at trial), because the Government did not argue that Pratt's story was a recent fabrication, the basis for admissibility as a prior consistent statement. At the time the testimony was sought to be introduced, Pratt had not yet testified, so there could be no assertion by the Government that this was recently fabricated testimony. The Government asserts that Pratt's testimony brought to the jury's attention his belief that the weapon had been stolen, and no reasonable juror would have given his wife's corroborating testimony much weight in the face of Pratt's other testimony and the testimony of the Government's witnesses.

Pratt has failed to satisfy his burden of showing that the district court committed plain error in excluding the testimony of his wife and her cousin as prior consistent statements under Rule 801(d)(1)(B). At the time the district court excluded the testimony of Pratt's wife and her cousin, Pratt had not testified. Therefore, there was no charge of recent fabrication to rebut.

10

Even assuming that the exclusion of the testimony constituted a plain error, Pratt has not shown that such error affected his substantial rights. As the Government noted, his own trial testimony was inconsistent regarding his purported belief that the gun had been stolen from under his bed.

Furthermore, the cases that he relies on in support of his contention that the testimony was admissible because it was not hearsay or, alternatively, because it was within the exception of Rule 803(3), are distinguishable. Pratt's wife and her cousin testified <u>before</u> Pratt took the stand in his own defense. Therefore, at the time the evidence at issue was excluded, he had not told the jury about his statements to his wife or her cousin regarding his belief that the cousin stole the gun. This case is thus distinguishable from <u>Parry</u>, in which the defendant told the jury about his conversation with his mother before his mother's corroborating testimony was excluded. Furthermore, unlike the defendants in <u>Jackson</u> and <u>Cantu</u>, Pratt was able to offer his explanation to the jury, which obviously rejected it as unbelievable. It is therefore unlikely that the jury would have believed Pratt's story had it been allowed to hear the corroborating testimony of Pratt's wife and her cousin, especially in the light of Pratt's own inconsistent trial testimony that he placed the gun under the bed for the protection of his family and never went back to touch it or look at it. <u>See</u> <u>Gonzalez</u>, 700 F.2d at 202 (holding that error in excluding corroborating evidence was

11

not reversible because defendant presented his story to the jury). Moreover, as in Gonzalez, the excluded testimony could not demonstrate the timing of Pratt's knowledge -- his belief in 2001 that the gun had been stolen by his wife's cousin because he could not find it under his bed does not preclude his having discovered that the gun was still there prior to August 2002 when the agents found it during their execution of the search warrant. See id. Under these circumstances, even if we assume that the district court erred by failing to admit the testimony as non-hearsay or as falling within the exception in Rule 803(3), any error in excluding the testimony was harmless.

B

For the first time on appeal, Pratt argues that his sentence was improperly enhanced based on facts that were neither charged in the indictment nor stipulated. According to the testimony of a federal agent at the sentencing hearing, during the execution of the search warrant, the officers found 27 bags of marijuana packaged for sale in Pratt's bedroom, where the shotgun was also found. In addition, they found ammunition and other drug-related items, including plastic bags containing marijuana residue and digital scales. The Presentence Report states that, at the same time that Pratt admitted to one of the agents that he possessed the firearm, he also admitted that he was a drug dealer, that he had sold and cooked cocaine in the past, and that he then sold marijuana to support his family.

12

The district court increased Pratt's base offense level by four levels pursuant to U.S.S.G. § 2K2.1(b)(5), which provides that "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense ... increase by 4 levels." Pratt also received a two-level increase in his offense level for obstruction of justice based on the district court's finding that he committed perjury when he testified at trial.

The parties filed supplemental briefs following the Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005). Pratt argued that the district court erred by increasing his sentence based on facts that were not alleged in the indictment or stipulated, and that the error affected his substantial rights because his guideline range increased from 51-63 months to 92-115 months. The Government argued that Pratt has not met his burden of establishing that any plain error affected his substantial rights, because he cannot establish that his sentence would be different under advisory guidelines. The Government observes that the district court imposed a sentence of 104 months, more than a year higher than the 92-month sentence at the bottom of the guideline range calculated for Pratt. It therefore contends that the district court would not have imposed a lower sentence, even if it had discretion to do so.

Because Pratt did not object to the sentence enhancements on constitutional grounds in the district court, our review is for plain error. United States v. Mares, ___ F.3d ___, 2005 WL 503715,

at *7.  Pratt has established <u>Booker</u> error because his sentence was enhanced based on findings of fact that were not found by the jury or admitted by Pratt.  <u>Id</u>. at *8.  In the light of <u>Booker</u>, the error is plain.  <u>See</u> <u>id</u>. (citing <u>Johnson v. United States</u>, 520 U.S. 461, 468 (1997)).

Pratt's challenge fails, however, under the third prong of the plain error analysis, which requires a showing that the plain error affected the defendant's substantial rights.  To make such a showing, the defendant must show that the error "affected the outcome of the district court proceedings."  <u>Id</u>. (quoting <u>United States v. Olano</u>, 507 U.S. 725, 734 (1993)).  To meet that standard, the party claiming error "must demonstrate a probability 'sufficient to undermine confidence in the outcome.'"  <u>Id</u>. (quoting <u>United States v. Dominguez Benitez</u>, 124 S.Ct. 2333, 2340 (2004)).

Thus, to satisfy the third prong of the plain error analysis, Pratt has the burden of demonstrating a reasonable probability that the district court would have imposed a lower sentence under advisory Sentencing Guidelines.  <u>Mares</u>, 2005 WL 503715, at *9.  As in <u>Mares</u>, we do not know what sentence the district court would have imposed had it known at the time of Pratt's sentencing that the Sentencing Guidelines were advisory rather than mandatory. There is nothing in the record to indicate that the district court would have imposed a lower sentence under advisory Sentencing Guidelines.  <u>See</u> <u>id</u>.  To the contrary, the district court chose to impose a sentence of 104 months even though it could have imposed

14

a sentence as low as 92 months under the Sentencing Guidelines range calculated for Pratt.  Accordingly, Pratt has not met his burden of establishing that his substantial rights were affected under the third prong of the plain error test.

## III

For the foregoing reasons, Pratt's conviction and sentence are

AFFIRMED.

15